

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| PARKWAY CONSTRUCTION SERVICES, INC., | ) ) ) | No. ED106326 |
| Respondent and Cross-Appellant, | ) ) ) ) | Appeal from the Circuit Court of the City of St. Louis |
| vs. | ) ) | |
| BLACKLINE LLC D/B/A BLACKLINE DESIGN AND CONSTRUCTION, and MAGNOLIA HALLIDAY LLC, | ) ) ) ) ) | Honorable James E. Sullivan |
| Appellants. | ) | FILED: March 26, 2019 |

## Introduction

A general contractor and plumbing subcontractor both appeal the trial court's judgment on breach-of-contract and equitable claims raised in the subcontractor's petition. The underlying dispute involves the renovation of two apartment buildings and whether the subcontractor exceeded the scope of work authorized by the contract it entered into with the general contractor. The general contractor appeals the judgment finding it liable for breach of contract and awarding attorneys' fees to the subcontractor as the prevailing party. The subcontractor appeals the judgment finding against it on its equitable claims of unjust enrichment and quantum meruit.

Although the subcontractor voluntarily dismissed its breach-of-contract claim, the trial court properly exercised its authority when reinstating the claim prior to trial where the voluntary

dismissal was made without prejudice by the plaintiff/subcontractor and the reinstatement caused no harm to the defendant/general contractor. While the record contains sufficient evidence to support much of the subcontractor's breach-of-contract claim, the trial court erred when it included the shower-valve work within the contract, and that part of the judgment is reversed.

As to the subcontractor's equitable claims, the record supports the trial court's finding that the subcontractor waived said claims. Lastly, we find that the subcontractor was the prevailing party, and therefore was entitled to an award of attorneys' fees under the contract. However, we remand the award of attorneys' fees to the trial court to reexamine the amount of the attorneys' fee award and ensure that the award does not include fees for work that was completely severable and related exclusively to the equitable claims upon which the subcontractor did not prevail.

Factual and Procedural History

## I.    The Contract

Parkway Construction Services, Inc. ("Parkway") and Blackline LLC ("Blackline") entered into a construction contract (the "Contract") pertaining to a renovation of two apartment buildings (the "Project") located on 2804-2820 S. Compton in St. Louis, Missouri (the "Property"). Magnolia Halliday, LLC ("Magnolia") owned the Property. Magnolia hired Blackline as the general contractor for the Project. Blackline subsequently entered into the Contract with Parkway, the plumbing subcontractor on the Project. Under the Contract, Parkway agreed to perform construction work relating to the plumbing system for buildings situated on the Property, including the provision of both labor and materials. Blackline agreed to pay Parkway $96,000 for this work. Although, Parkway was to supply materials necessary for the scope of its work under the Contract, Blackline agreed to provide shower valves, faucets, tubs, and sinks. Parkway committed to "[r]ework all existing water supply lines and waste drains at

2

tubs, sinks, and showers to accommodate new fixtures and locations per plans." The Contract defined Parkway's objective as "provid[ing] a complete working plumbing system[.]"

Both Parkway and Blackline believed it was likely that some of the drain/waste/vent ("DWV") piping in the walls would not need to be replaced as part of Parkway's rework of the plumbing systems. However, the parties were uncertain as to how much of the DWV piping would need to be replaced to complete the Project. Because Parkway was unwilling to accept the risk of replacing all of the DWV piping, the parties stipulated that Parkway would be responsible under the Contract for repairing or replacing up to a maximum of fifty percent of the DWV piping. The record before us suggests that this "fifty-percent threshold" was not clearly defined. Both parties defined the threshold differently at trial and in their briefs. However, the record is clear that any work exceeding the fifty-percent threshold was beyond the scope of work under the Contract, and would be considered either an additional cost or extra work. The Contract expressly precluded Parkway from performing extra work beyond the scope of the Contract without first obtaining written authorization by Blackline.

> Pertinent to this appeal, the Contract included a change-order provision, mandating that:
>
> Any adjustment in the [Contract] Amount or time of performance shall be authorized by a Change Order. No adjustments shall be made for any changes performed by [Parkway] that have not been ordered by [Blackline]. A Change Order is a written instrument prepared by [Blackline] and signed by [Parkway] stating their agreement upon the change in [Contract] Work.

The Contract also provided that all progress payments were "subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement or [Blackline]." Additionally, "[f]inal payment shall constitute a waiver of all claims by [Parkway] relating to [Contract] Work[.]"

The Contract also contained an attorneys' fee provision, stating that "[t]he prevailing party in any dispute that goes beyond mediation arising out of or relating to this [Contract] or its

3

breach shall be entitled to recover from the other party reasonable attorneys' fees, costs and expenses incurred by the prevailing party in connection with such dispute." The Contract did not define "prevailing party."

## II.    Performance under the Contract

As Parkway began work under the Contract, the Project quickly began to fall behind schedule due to factors beyond Parkway's control. Blackline continuously pressured Parkway to stay on schedule. As Parkway's plumbers performed the plumbing work on the Project, they repaired or replaced almost all stacks/DWV piping in the two apartment buildings.[1] The plumbers replaced both horizontal and vertical piping from a few feet above the basement floor to the highest drain connection at each stack. Parkway did not replace the cast-iron vent stacks that did not carry water or waste and allowed only for air venting. Parkway did not obtain a written change order or even a definite verbal authorization from Blackline to replace more than fifty percent of that piping. On May 8, 2015, Parkway emailed Blackline stating in pertinent part:

> I know we conceded to replacing up to [fifty percent] of the stacks without additional cost. We are there. How do you want to handle this going forward? This has been a tough job with a ton of additional costs we could not have foreseen. I am sure that is true for both of us. We are keeping track of the time and materials but want to know if we need to talk about it before we get too far into the process. Be assured we will do all we can to limit any additional work but the inspectors are being less than forgiving and much of the existing stacks are cracked.

Blackline responded three days later, telling Parkway that it disagreed that Parkway had reached the fifty-percent threshold. Blackline further stated that there should not be an issue

---

[1] Part of the difficulty in defining the fifty-percent threshold lay in the parties' inability to agree on whether the Contract meant fifty percent of all DWV piping or fifty percent of the "stacks." "Stacks" here refer to the primary line of DWV piping that ran from the basement vertically to the roof. The trial court found, and we reiterate now, that the distinction between "stack" versus "all DWV piping" and the precise definitions of each are not determinative of the issues before us.

4

completing the job within the fifty-percent allowance. On June 1, 2015, Parkway sent Blackline another email informing Blackline that Parkway had replaced all forty-three stacks.

Parkway created two change-order forms: one form relating to the extra DWV-piping work and a second form relating to extra shower-valve work. Parkway submitted the shower-valve change-order form to Blackline before commencing work on the shower valves. Blackline approved Parkway's change-order request for the shower-valve work for $1051. Parkway submitted the DWV-piping work change-order form to Blackline only after completing the work. Parkway continued working on installing a complete, working plumbing system, but did not detail the precise hours spent on each task to Blackline.

Due to the parties' dispute and Blackline's refusal to grant retroactively Parkway's change-order request for the extra DWV-piping work, Parkway stopped performing work under the Contract. Blackline was required to hire another plumbing contractor to complete the remainder of the work for which Parkway was obligated under the Contract.

## III. Payment

Despite the disagreement between Blackline and Parkway as to the amount Blackline owed Parkway for the DWV piping replacement, Parkway executed a lien waiver in return for Blackline's payment of $25,200 (the "Waiver") on June 16, 2015. The Waiver read:

> Contractor/Supplier hereby waives all right, title and interest to any claim of any kind for payment for its Work through today's date; including, but not limited to, claims to a mechanic's or other form of lien or claim on or against: (a) the Property or the improvements thereon; (b) any funds for the Property or the Project, whether held by the Owner or otherwise; or (c) any funds due or to become due any higher-tier contractor. This is a partial waiver with respect to the Work, and Contractor/Supplier expressly reserves the right to assert claims for payment (including mechanic's liens) for Work performed after the date listed below.

The Waiver defines "Work" as labor and/or materials furnished on or for the Project.

5

After Parkway ceased working, Blackline offered Parkway a check for $8712.97, which Blackline calculated as the remaining amount due to Parkway on the Contract after subtracting Blackline's cost of hiring a second subcontractor to complete the job. Parkway refused to accept the final payment, fearing it would preclude Parkway from seeking payment relief for the extra work Parkway performed on the Project. At trial, Blackline admitted to owing Parkway $1051 for the extra shower-valve work and $8712.97 under the Contract.

## IV. Pre-Trial

Parkway filed a petition against Blackline and Magnolia on March 17, 2016 seeking compensation for the work Parkway completed on the Project. Parkway included four counts in its petition. In Count I, Parkway alleged Blackline was unjustly enriched by Parkway's additional work outside the scope of the Contract, and thus Parkway prayed for judgment against Blackline in the amount of $79,449. In Count II, Parkway contended Blackline either requested the extra and additional work or acquiesced, accepted, and retained the extra work performed, and thus Parkway sought $79,449 under the principle of quantum meruit. In Count III, Parkway averred that it substantially performed its obligations under the Contract and Blackline breached the Contract by failing to pay Parkway the remaining $24,000 due and payable under the Contract. In Count IV, Parkway argued Magnolia owed Parkway $100,569 under a mechanics' lien against the Property.

Blackline and Magnolia moved for summary judgment on Count IV. The trial court granted the motions and dismissed Count IV because Parkway's statement of the mechanic's lien was insufficient and unenforceable as it failed to describe the work performed or identify the labor and materials Parkway was claiming as subject to the lien. Count IV is not at issue in this appeal.

6

On May 3, 2017, Parkway voluntarily dismissed Count III without prejudice. Although the record is unclear as to when Parkway requested leave of court to amend its petition to reinstate its claim for breach of contract, Blackline filed suggestions in opposition of Parkway's oral motion to reinstate Count III on May 5, 2017; just two days after Parkway filed its voluntary dismissal. On May 8, 2017, the trial court granted Parkway leave to reinstate Count III over Blackline's objection. Blackline requested that the trial court "be sure the record does reflect that it's a reinstatement of a dismissed claim and not assertion of a new claim[.]" The trial court responded, "[y]es. And I believe that was the oral motion and that is how the order shall read." The case proceeded to a bench trial.

## V.    Trial

Parkway presented evidence at trial of the money Parkway claimed Blackline owed related to the work Parkway completed on the Project. Specifically, Parkway presented evidence that Blackline originally agreed to pay Parkway $96,000. Blackline paid Parkway two installments under the Contract, totaling $72,000. Accordingly, Blackline owed Parkway $24,000 for the Contract work. Parkway also introduced evidence of the "extra work" costs: the shower-valve work ($1051), the cost to replace the DWV piping beyond the fifty-percent threshold ($64,908), fixture costs outside the Contract ($1600), and basement re-piping ($11,890). Parkway introduced evidence that the cost of the "extra work" totaled $79,449. Parkway sought $79,449 in damages on its equitable claims in Counts I and II, and damages of $24,000 in Count III for breach of contract, for a total damage claim of $103,449.

The trial court found in favor of Blackline on Counts I and II. The trial court found in favor of Parkway on Count III and awarded Parkway $9763.97 in damages. The trial court then determined Parkway to be the prevailing party, and awarded Parkway attorneys' fees totaling $103,234.31.

7

The trial court noted in its judgment that "[t]his is a dispute over plumbing services rendered by [Parkway][.]" The trial court acknowledged the multiple miscommunications contributing to the dispute between Parkway and Blackline. The trial court found that, as of the email on May 8, 2015, Parkway told Blackline that it had already reached the fifty-percent threshold. The trial court determined that Parkway "substantially performed its obligations under the Contract" and awarded Parkway damages of $9763.97 on Count III. Specifically, the trial court awarded Parkway $8712.97 as the remaining payment due for the work performed under the Contract, less the amount Blackline paid the second contractor to complete the Project after Parkway halted its work. The trial court also found that Blackline owed Parkway $1051 for certain "shower-valve work" discussed during trial, and that Blackline's refusal to pay Parkway for this work constituted a second breach of contract. The trial court further held that although Parkway did not plead any breach of contract claim regarding the "shower-valve work" in its petition, the claim was tried by consent of the parties at trial.

The trial court found Blackline's tender of $8712.97 as the final payment under the Contract to be a conditional settlement offer. The trial court generally described Blackline's behavior as "employ[ing] sharp practices to pressure Parkway to complete the [P]roject while at the same time Blackline was generally, and again purposefully, unresponsive to Parkway's attempts at communication."

Regarding Parkway's claims of unjust enrichment and quantum meruit under Counts I and II, the trial court determined that the extra work for which Parkway sought payment was completed before June 16, 2015. The trial court denied relief on these counts finding that Parkway did not prove that Blackline either requested the extra DWV-work or acquiesced to its performance. Additionally, the trial court found insufficient evidence to show that Blackline

8

unequivocally knew that the Contract work was to include the replacement of DWV piping above the fifty-percent threshold, or that Blackline had an opportunity to accept it, reject it, or acquiesce to Parkway's replacement of the DWV pipes above the fifty-percent threshold. Lastly, the trial court found that Parkway released any claims it may have had under Counts I and II when it signed the Waiver on June 16, 2015.

Blackline now appeals, and Parkway cross-appeals.

## Points on Appeal

Blackline raises four points on appeal. In Point One, Blackline alleges that the trial court erred in reinstating Count III of Parkway's petition because once Parkway voluntarily dismissed Count III, the trial court was required to treat Count III as if it was never filed, and any attempt to reinstate Parkway's breach-of-contract claim was a nullity. In Point Two, Blackline argues that the trial court erred in entering judgment in favor of Parkway on Count III relating to the shower-valve work because the trial court's award was improperly based on relief for which Parkway had not prayed in its petition and was not tried by consent. In Point Three, Blackline posits that the trial court erred in finding that Parkway was the prevailing party because Parkway was unsuccessful on Counts I, II, and IV, and those counts comprised the main issues of the litigation. In Point Four, Blackline maintains that the trial court erred in awarding Parkway $103,234.31 in attorneys' fees because the award was disproportional to the judgment and the trial court failed to exclude fees for the claims on which Parkway was unsuccessful.

Parkway raises three points on cross-appeal. In Cross-Appeal Point One, Parkway contends that the trial court erred in entering judgment against Parkway on Count I for unjust enrichment because the judgment is against the weight of the trial court's own findings of fact and the evidence, as substantial evidence supports each element of Parkway's unjust-enrichment claim. In Cross-Appeal Point Two, Parkway argues that the trial court likewise erred in entering

9

judgment against Parkway on Count II for quantum meruit because substantial evidence supports its claim. In Cross-Appeal Point Three, Parkway claims that the trial court erred in ruling that Parkway waived its equitable claims by virtue of the Waiver because the Waiver did not apply to claims outside the scope of the Contract, was ambiguous, and lacked consideration.

## Discussion

**I.    Point One—Reinstatement of Count III**

### A.    Standard of Review

We review a trial court's granting of a motion to amend a petition for an abuse of discretion. Diehl v. Fred Weber, Inc., 309 S.W.3d 309, 325 (Mo. App. E.D. 2010). "[T]he burden is upon the proponent of the amendment to show the ruling was so arbitrary and unreasonable as to shock the sense of justice and to indicate a lack of careful consideration." Id. We will not disturb the trial court's actions "absent an obvious and palpable abuse of that discretion." Id. However, any interpretations of case law and statutes are pure legal questions, and thus we review them de novo. Richter v. Union Pac. R.R., 265 S.W.3d 294, 297 (Mo. App. E.D. 2008).

### B.    Analysis

Parkway voluntarily dismissed Count III without prejudice shortly before the bench trial. Almost as quickly as it voluntarily dismissed Count III, Parkway sought to reinstate the breach of contract claims alleged in Count III. Parkway orally sought reinstatement of Count III in pretrial motions before any evidence was presented at trial. The question before us is whether the trial court retained authority to reinstate a claim that had been voluntarily dismissed without prejudice from a multi-claim petition. The parties spar over the term "reinstatement" and the consequence of the trial court's use of that term in its judgment. Given the particular facts as found in the record, we deem the trial court's semantics in styling its action as a "reinstatement" of the

10

petition as opposed to an "amendment" of the petition to be a distinction without a difference. A review of the pertinent rules of civil procedure guides our analysis.

Rule 67.02[2] allows a plaintiff to dismiss a civil action without a court order any time prior to the introduction of evidence at a bench trial. Rule 67.02(a)(2). Rule 67.02(a) exists for the convenience of plaintiffs. Richter, 265 S.W.3d at 299. A voluntary dismissal is deemed "without prejudice" unless otherwise specified by the plaintiff or court. Rule 67.02(c). "A dismissal without prejudice permits the party to bring another civil action for the same cause, unless the civil action is otherwise barred." Rule 67.01. If a plaintiff voluntarily dismisses an action, the dismissal is "effective on the date it is filed with the court." State ex rel. Fortner v. Rolf, 183 S.W.3d 249, 251 (Mo. App. W.D. 2005).

Rule 55.33(a) authorizes a trial court to grant a plaintiff leave to amend its petition after a responsive pleading is filed "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Rule 55.33(a). When a party dismisses all counts involved in a suit, the court loses jurisdiction over the suit because there are no pending claims or parties and nothing left for the court to determine. See Hague v. Trs. of Highlands of Chesterfield, 431 S.W.3d 504, 508 (Mo. App. W.D. 2014); Stewart v. Liberty Mut. Fire Ins. Co., 349 S.W.3d 381, 384 (Mo. App. W.D. 2011). See also Liberman v. Liberman, 844 S.W.2d 79, 80 (Mo. App. E.D. 1992) ("the trial court has no power to reinstate the case, even the next day upon a plaintiff's motion") (citing Emigh Eng'g Co. v. Rickhoff, 605 S.W.2d 173, 174 (Mo. App. E.D. 1980)).[3]

---

[2] All Rule references are to Mo. R. Civ. P. (2017).

[3] Case law addressing this issue generally discusses the trial court's jurisdiction over a claim after said claim has been dismissed. As the Supreme Court of Missouri noted in J.C.W. ex rel. Webb v. Wyciskalla, 275 S.W.3d 249, 254 (Mo. banc 2009), the issue presented is not an issue of subject matter jurisdiction. Rather, Blackline challenges the trial court's authority to reinstate Count III following the voluntarily dismissal by Parkway. To the extent the parties frame the issue as the trial court's jurisdiction over Count III, we analyze the point on appeal as a challenge to the trial court's authority.

11

In Richter v. Union Pacific R.R. Co., we held in a case of first impression, that a party may voluntarily dismiss fewer than all of their initial claims without disrupting the court's jurisdiction over the remaining claims under Rule 67.02(a). 265 S.W.3d at 299.[4] In Richter, three days before the trial, the plaintiff voluntarily dismissed one of its claims. Id. at 296. Important to our analysis, the plaintiff specified that it was dismissing the claim with prejudice. Id. Subsequently, the defendant filed a motion to dismiss the remaining counts. Id. After hearing oral arguments on the motion to dismiss, the plaintiff moved to withdraw its previous dismissal of the count. Id. The trial court determined that it retained no jurisdiction to reinstate the appellant's claim because the court lost jurisdiction once the plaintiff voluntarily dismissed the claim with prejudice. Id. We noted that if a plaintiff dismisses one or more counts of a multi-count petition, "all the effects of such dismissal will attach[,]" including a dismissal with prejudice. Id. at 299.

Here, Blackline reasons that Richter precluded the trial court from reinstating Count III because the trial court lost authority over Count III once Parkway voluntarily dismissed that claim. Blackline properly recites Richter's holding that once a party voluntarily dismisses a claim, the court loses jurisdiction over that claim and all effects of such dismissal must attach. Id. Blackline is nevertheless misguided in its reliance upon Richter because Richter is factually distinguishable from this case. Critically, Richter dealt with a claim that was voluntarily dismissed **with prejudice**. Id. at 296. Here, Parkway voluntarily dismissed Count III **without prejudice**. The effect of a dismissal without prejudice differs significantly from the effect of a dismissal with prejudice. See Rules 67.01; 67.02(c). Specifically, "[a] dismissal without prejudice permits the party to bring another civil action for the same cause, unless the civil action

---

[4] Richter was decided before Wyciskalla. See generally Wyciskalla, 275 S.W.3d 249.

12

is otherwise barred." Rule 67.01. But, "[a] dismissal with prejudice bars the assertion of the same cause of action or claim against the same party." Id. We agree that when Parkway voluntarily dismissed Count III without prejudice, the trial court lost authority over that count. Nevertheless, where we diverge from Blackline is the trial court's authority to grant Parkway's request to reassert Count III as another civil action.

Blackline vehemently posits that the terms "reinstatement" and "amend the petition" have vastly different consequences on whether the trial court possessed authority to allow Parkway to relitigate Count III after it was voluntarily dismissed. Blackline requested that the trial court "be sure the record does reflect that it's a reinstatement of a dismissed claim and not assertion of a new claim[.]" The trial court agreed.

Importantly, we treat the reinstatement of a case and amending the petition differently under Missouri law. See Hague, 431 S.W.3d at 508 ("Once a party voluntarily dismisses a case, it is as if the suit were never brought. The circuit court may take no further steps as to the dismissed action, and any step attempted is viewed a nullity."). However, we are not convinced that there is a meaningful difference in labeling Parkway's reassertion of Count III a "reinstatement" or an "amendment" under the facts of this case. Without question, the trial court retained authority over the remaining counts in Parkway's petition after the voluntary dismissal of Count III. Richter, 265 S.W.3d at 299. Because the trial court retained authority over Parkway's petition, it acted within its considerable discretion under Rule 55.33(a) to reconsider Count III pursuant to Parkway's motion.[5] Contra Diehl, 309 S.W.3d at 327 (finding the plaintiff

---

[5] Blackline argues that the trial court attempted to "reinstate" Count III, instead of permitting Parkway to "amend the petition" to reassert Count III. However, because Parkway voluntarily dismissed Count III without prejudice, Parkway is permitted to relitigate Count III "unless the civil action is otherwise barred." Rule 67.01. Thus, regardless of how the trial court characterized the re-entry of Count III to the suit, we analyze the trial court's actions to determine whether the relitigation of Count III was otherwise barred by Missouri laws. We find that it was not otherwise barred, nor has Blackline suggested the claim is barred for any reason other than the prior voluntary dismissal.

13

was not entitled to amend its petition under Rule 55.33(a) because three years had passed and the matter was placed on the docket before any attempt to amend the plaintiff's petition).

Further, we find that the trial court properly sought to rule on the merits of the case before it and avoid wasting judicial resources. Amending Parkway's petition to include the breach of contract claim in Count III caused absolutely no prejudice to any party. Count III had been dismissed mere days before it was added back to the amended petition. It is not disputed that both parties were fully prepared to litigate the breach of contract claims alleged in Count III. See Clark v. Kinsey, 488 S.W.3d 750, 763–64 (Mo. App. E.D. 2016). After reviewing the record as a whole, we find the trial court acted within its discretion by permitting Parkway to reassert Count III in its petition prior to trial. We firmly reject Blackline's attempt to distort the clear dictates of Rule 67.01 in an effort to procedurally hijack Parkway's claim for breach of contract. Point One is denied.

## II.  Point Two—Award for Relief not Pleaded

### A.  Standard of Review

We must affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Hill v. Mo. Dep't of Conservation, 550 S.W.3d 463, 466–67 (Mo. banc 2018) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)). "We review the evidence and its reasonable inferences in the light most favorable to the judgment and disregard any evidence and inferences to the contrary." State ex rel. Family Support Div. v. Steak'm Take'm LLC, 524 S.W.3d 584, 589 (Mo. App. W.D. 2017) (internal citations omitted). "We defer to the trial court's assessment of credibility, recognizing that it is free to accept or reject all, part, or none of the testimony presented." Id. However, we review issues of law de novo. Richter, 265 S.W.3d at 297.

14

B.    Analysis

Blackline challenges the trial court's award of $1051 to Parkway for the shower-valve work because Parkway's allegations for breach of contract in its amended petition did not seek relief for the shower-valve work. Blackline further contends that the shower-valve issue was not tried by consent. Blackline argues that Parkway presented the shower-valve work as "extra work" outside the Contract, thus it was not included in Count III's breach-of-contract claim. Instead, any evidence relating to the shower-valve work related to Parkway's equitable theories of recovery in Counts I and II.

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 55.33(b). Further, parties may amend the petition, as necessary, to conform to the evidence upon motion of any party at any time, even after judgment. Id. "A trial court may grant relief absent an express prayer when such relief is fully supported by the facts that were either pled or tried by consent." Sunbelt Envtl. Servs. v. Rieder's Jiffy Mkt., 138 S.W.3d 130, 134 (Mo. App. S.D. 2004) (internal citations omitted). However, "[t]he implied consent rule only applies when the evidence introduced at trial bears on a new issue and is not pertinent to issues already in the case." Heritage Roofing, LLC v. Fischer, 164 S.W.3d 128, 132 (Mo. App. E.D. 2005) (internal quotations omitted); see also Schieffer v. Decleene, 539 S.W.3d 798, 807 (Mo. App. E.D. 2017). In other words, "if evidence that raises issues beyond the scope of the pleadings is relevant to another issue already before the trial court," then the implied consent rule is not applicable. Heritage Roofing, LLC, 164 S.W.3d at 132–33.

Parkway's petition makes no reference to the term "shower valves." In its opening statement at trial, Parkway detailed what money Blackline owed it related to the Project. Specifically, Parkway stated that, under the Contract, Blackline still owed Parkway $24,000.

15

Subsequently, Parkway detailed the cost of "extra work" for which Blackline was obligated. Included among the items of extra work was $1051 for the shower-valve work. The total amount of "extra work" Parkway claimed Blackline owed it for the extra work totaled $79,449. Parkway's amended petition seeks $79,449 in damages on its equitable claims and for $24,000 for Blackline's breach of the Contract.

Based on the evidence introduced by Parkway during trial, it is clear that although Parkway did not specifically mention "shower valves" in its petition, the payment claimed for such work was subsumed within the "extra work" contributing to Parkway's total damages on its equitable claims. Because the shower-valve work was in fact an issue raised by Parkway within the equitable claims of its petition, Rule 55.33(b) does not apply. See id. at 132–33. Accordingly, we cannot treat the shower-valve issue as having been tried by consent of the parties. The trial court erroneously treated this issue as tried by consent and erred in awarding Parkway $1051 damages in the amended judgment when it granted Parkway relief in Count III.

Even, assuming arguendo, we were to find no reference to the shower-valve issue in Count I and II of Parkway's petition, the record nevertheless compels our holding that this issue was not tried by consent as part of Count III. During trial, Parkway presented evidence of a change-order form it submitted to Blackline to conduct extra work on the shower valves. Blackline did not object to this evidence. In fact, Blackline agreed to the change-order provision, and Parkway commenced the shower-valve work as extra work. Blackline admitted at trial that it had agreed to pay Parkway $1051 for the extra shower-valve work although it had not yet paid that amount.

The trial court found that evidence of the shower-valve change order formed a separate contract outside the scope of the Contract. Upon Parkway's motion, the trial court amended the

16

judgment to find that "Blackline's failure to pay Parkway [$8712.97] except on the condition that Parkway abandon its claim for payment on the shower valves[] constituted a second breach of contract."

Blackline posits that all of evidence relating to the shower-valve work was relevant to the equitable issues contained in Counts I and II of Parkway's petition, and thus it did not impliedly consent to try the shower-valve issue as a breach-of-contract claim. We agree. See Wallace v. Grasso, 119 S.W.3d 567, 575–76 (Mo. App. E.D. 2003) (finding against the tried-by-consent argument because the evidence was also relevant to other issues in the case). Evidence of the shower-valve change order was relevant to show Parkway's knowledge of the requirement to request a change order prior to conducting additional work on the Project. The record also reveals that Parkway discussed the shower-valve work in conjunction with the extra work performed "outside the scope of the Contract." Parkway characterized the shower-valve work as extra work that was coupled with other "extra work" for which Parkway sought payment under Counts I and II. The record is clear that Parkway introduced evidence of the shower-valve work to prove its equitable claims under Counts I and II and not as evidence of a second breach of the Contract.

The shower-valve evidence contributed to both Blackline's argument that Parkway should have submitted a change-order provision for the DWV-piping work beyond the fifty-percent threshold, as well as Parkway's contention that Blackline owed Parkway money for work done outside the scope of the Contract. The record does not contain substantial evidence to support a finding that the shower-valve evidence contributed to a separate breach-of-contract claim tried by consent of the parties. See Schieffer, 539 S.W.3d at 807; Wallace, 119 S.W.3d at 575–76; Heritage Roofing, LLC, 164 S.W.3d at 132–33. Therefore, the trial court erroneously

17

applied the "tried-by-consent" law and erred in awarding Parkway $1051 for the shower-valve work.

Point Two is granted.

## III. Points Three and Four—Prevailing Party and Attorneys' Fees

### A. Standard of Review

We review a trial court's determination of the prevailing party under a contract as a question of law, which we consider de novo. Frontenac Bank v. GB Invs., LLC, 528 S.W.3d 381, 396 (Mo. App. E.D. 2017). "If a contract provides for the payment of attorneys' fees in the enforcement of a contract provision, the trial court must award them to the prevailing party." Id. (internal quotation omitted).

We review a trial court's award of attorneys' fees for an abuse of discretion. Berry v. Volkswagen Grp. of Am., Inc., 397 S.W.3d 425, 430 (Mo. banc 2013). "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." Id. at 431.

### B. Analysis

In Point Three, Blackline alleges that the trial court erred in finding Parkway the prevailing party under the Contract. In Point Four, Blackline contends that the trial court erred in awarding Parkway $107,234.31 in attorneys' fees. Because the trial court's determination of the prevailing party directly affects its award of attorneys' fees, we review Points Three and Four together below.

"The general rule in Missouri is that attorneys' fees are only recoverable when a statute specifically authorizes recovery or when attorneys' fees are provided for by a contract." Rental Co. v. Carter Grp., Inc., 399 S.W.3d 63, 67 (Mo. App. W.D. 2013) (internal quotations omitted).

18

"[W]hen a claim for attorney[s'] fees is based on a contract provision allowing the prevailing party to recover fees, the trial court must comply with the terms of the contract and award attorney[s'] fees to the prevailing party." Clark v. Kinsey, 558 S.W.3d 573, 579 (Mo. App. E.D. 2018). Here, the Contract contains an attorneys' fees provision. The Contract states that "[t]he prevailing party in any dispute that goes beyond mediation arising out of or relating to this [Contract] or its breach shall be entitled to recover from the other party reasonable attorneys' fees, costs and expenses incurred by the prevailing party in connection with such dispute." The Contract does not define "prevailing party."

As the trial court correctly noted, Missouri courts have defined the term "prevailing party" in various ways. A recurrent focus of the Western District has been on the recovery of some relief by judgment, regardless of the amount. See Brooke Drywall of Columbia, Inc. v. Bldg. Constr. Enters, Inc., 361 S.W.3d 22, 27 (Mo. App. W.D. 2011); see also Rental Co., 399 S.W.3d at 67–68. The Western District found support for this approach from Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001). In Buckhannon, the U.S. Supreme Court, when reviewing the legislative history of the underlying statute allowing the recovery of attorneys' fees to the prevailing party, held that a prevailing party is "[a] party in whose favored judgment is rendered, regardless of the amount of damages awarded[.]" 532 U.S. at 603 (quoting BLACK'S LAW DICTIONARY 1145 (7th ed. 1999)). In applying the reasoning of Buckhannon, the Western District makes no distinction between a "prevailing party" designated by statute or private contract. See Brooke Drywall of Columbia, Inc., 361 S.W.3d at 27.

This Court more recently defined a "prevailing party" for the purposes of a contractual award as "the party prevailing on the main issue in dispute, even though not necessarily to the

19

extent of its original contention." Clark, 558 S.W.3d at 579–80 (internal quotations omitted); see also Desu v. Lewis, 427 S.W.3d 843, 845 (Mo. App. E.D. 2014) (citing Ken Cucchi Constr., Inc. v. O'Keefe, 973 S.W.2d 520, 528 (Mo. App. E.D. 1998)). In litigation presenting a single claim, we see no substantial difference in the application of these two approaches. However, when a plaintiff raises multiple claims and the trial court grants only partial relief on those claims, the court must determine the "main issue" in dispute. See, e.g., Paradise v. Midwest Asphalt Coatings, Inc., 316 S.W.3d 327, 330 (Mo. App. W.D. 2010) (finding the main issue was the validity of the original non-compete agreement, and not the granting of an injunction based on the non-compete agreement); Flamingo Pools, Spas, Sunrooms & More Store, Inc. v. Penrod, 993 S.W.2d 588, 590 (Mo. App. S.D. 1999) (finding the trial court did not err in refusing to award attorneys' fees because the award was based on an account, not the contract provision, which was the main issue in dispute); Hoag v. McBride & Son Inv. Co., 967 S.W.2d 157, 175 (Mo. App. E.D. 1998) (refusing to declare the plaintiff the prevailing party where the plaintiff only succeeded on a claim that a covenant was created, but lost the five remaining claims based upon who retained title under the covenant).

Blackline reasons that the trial court erred in finding Parkway the prevailing party because Parkway did not prevail on the main issue of the case. Blackline and Parkway disagree as to what constitutes the main issue of the litigation. Blackline contends that Counts I, II, and IV—the two equitable claims and the mechanic's lien—comprise the main issue in this case: more specifically, whether Parkway is entitled to payment for the extra work conducted outside the Contract. On the other hand, Parkway maintains that its breach of contract claim presented the main issue: Parkway's entitlement to full payment for the work it performed pursuant to the Contract. The trial court found that Parkway prevailed on the breach-of-contract claim, in which

20

Blackline was found liable for two breaches, while Parkway was found not to be in breach of the Contract. Finding that the parties intended the attorneys' fee provision to provide an additional remedy for the non-breaching party, the trial court found Parkway to be the prevailing party.

The record is clear that Parkway litigated three claims against Blackline. However, Parkway's entitlement to attorneys' fees has its origin solely in the Contract. Accordingly, we must determine which the Contract qualifies as the prevailing party. To do so, we must interpret the plain language of the Contract. See Clark, 558 S.W.3d at 579. Here, the language of the Contract expressly requires that the dispute "arise out of or relat[e] to" the Contract. Parkway's single breach-of-contract claim (Count III) without question "arises out of" the Contract. A plain reading of Parkway's equitable claims (Counts I and II) show that these counts do not arise out of the Contract. But these equitable claims unquestionably "relate to" the Contract. Thus, all three Counts invoke the attorneys' fee provision of the Contract based on the plain language of the associated provision. The question then becomes, because Parkway was successful on only a portion of Count III, did it win on the "main issue" of the litigation?

The trial court's singular focus on the breach of contract claim narrowly defined the main issue of the litigation. In all three Counts, Parkway sought full payment for plumbing work completed. Parkway separated its claims into work performed within the scope of the Contract and work performed outside the scope of the Contract. However, without specific knowledge as to when Parkway began conducting work past the fifty-percent threshold, and without a clear definition of what both parties intended by the term "fifty-percent threshold" in this case, it is extremely challenging to separate out the work performed within the scope of the Contract from work Parkway performed outside the scope of the Contract. When viewing the entire record, we hold that the main issue in this litigation is simply Parkway's demand for payment for work

21

performed on the Project for which it has not been paid. Defined so generally, even though Parkway itemized its claim for payment into separate counts, the main issue in the litigation is the same for these separate counts—Parkway sought complete payment for the plumbing work performed on the Project for which it had not been paid. The trial court awarded damages to Parkway for work performed on the Project, even though only under Count III. Importantly, the trial court awarded Parkway damages for work it performed under the Contract, even though not to the extent of its contention in its amended petition.[6] See Clark, 558 S.W.3d at 579–80; Desu, 427 S.W.3d at 845. Thus, Parkway prevailed on Count III with respect to its breach-of-contract claim. Rental Co., 399 S.W.3d at 67 ("A party need only obtain 'some relief' from the court in order to be deemed the 'prevailing party.'"). Although the trial court did not award Parkway all $24,000 prayed for in Count III, and found in favor of Blackline on Counts I and II, Parkway nevertheless is the prevailing party. See id.

As the prevailing party, Parkway was entitled to attorneys' fees under the Contract. See Frontenac Bank, 528 S.W.3d at 396. Blackline posits that the trial court erred in awarding Parkway attorneys' fees because, even if Parkway was the prevailing party, the trial court erred in awarding such a large amount of attorneys' fees.

The record before us does not suggest the trial court's award of attorneys' fees lacked careful consideration. The trial court presented a complete analysis of the hourly rate of Parkway's attorneys, as well as the work done to prepare for litigation. See City of O'Fallon v. CenturyLink, Inc., 491 S.W.3d 276, 285–86 (Mo. App. E.D. 2016) ("the [trial] court is an expert on the question of attorney[s'] fees"). In addition, the trial court noted that Parkway's claims

---

[6] Blackline was found to have breached the Contract by not paying Parkway $8712.97 for work Parkway performed under the Contract. We defer to the trial court's finding that Blackline's proffer of payment was a conditional offer of settlement, and not payment of the money owed to Parkway.

were not easily severable because the research and work done for each claim contributed to the work of the other claims. See Williams v. Fin. Plaza, 78 S.W.3d 175, 185 (Mo. App. W.D. 2002) ("[I]f the claims for relief have a common core of facts and are based on related legal theories and much of counsel's time is devoted generally to the litigation as a whole making it difficult to divide the hours expended on a claim-by-claim basis, such a lawsuit cannot be viewed as a series of distinct claims."). However, we are cautious not to award Parkway attorneys' fees for those claims on which it did not prevail. See Desu, 427 S.W.3d at 845 n.1 (citing Ken Cucchi Constr., 973 S.W.2d at 528).

Where a prevailing party is successful on some but not all of its contract-based claims, Missouri courts restrict an award of attorneys' fee to only those claims upon which the party prevailed. See McClain v. Papka, 108 S.W.3d 48, 54 (Mo. App. E.D. 2003). However, "where a plaintiff's claims are related and [it] has obtained excellent results overall, [its] counsel should recover a fully compensatory fee that should not be reduced simply because [it] has not prevailed on every litigated claim." Williams, 78 S.W.3d at 185.

Here, Parkway's evidence at trial related generally to all claims: Parkway sought to establish all the work it conducted on the Project for which Blackline had not yet paid. Parkway presented two separate legal theories at trial—breach of the Contract and equitable claims for work conducted outside the scope of the Contract. The difference between these claims is dependent upon when the work performed by Parkway was completed—before the fifty-percent threshold was reached or after. Although the theories of liability are separated by time, these times are not clearly defined in the litigation. Specifically, although the trial court found that Blackline knew at least by May 2015 that Parkway had reached the fifty-percent threshold, there was no clear finding of the exact date Parkway began conducting work beyond the scope of the

23

Contract. Thus, it is plausible that in presenting its claims, Parkway's counsel had to review all work conducted by Parkway, and then apply the law accordingly, instead of being able to easily separate work performed under the scope of the Contract from work performed outside the scope of the Contract. See id.

The facts found in the record are convoluted and signal confusion by both parties. Given the overlapping nature of the evidence that may have been relevant in some way to each of the claims litigated by the parties, the record presents uncertainty as to the propriety of the amount of the award of attorneys' fees. For that reason, and that reason alone, we remand this issue to the trial court to reexamine Parkway's attorneys' fees and ensure that Parkway was not awarded excessive attorneys' fees. Specifically, the trial court's findings and award must show that Parkway is not awarded attorneys' fees for work that was completely severable and related exclusively to the equitable claims, including the shower-valve work, that were unsuccessful either before the trial court and before us now. Because we consider trial courts experts on the issue of awarding attorneys' fees, the trial court is in the best position to make this determination. See Kan. City Live Block 139 Retail, LLC v. Fran's K.C. Ltd., 504 S.W.3d 725, 737 (Mo. App. W.D. 2016). We remand this point for further consideration by the trial court.

## IV.  Cross-Appeal

### A.  Standard of Review

We will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Flooring Sys. v. Staat Constr. Co., 100 S.W.3d 835, 837 (Mo. App. E.D. 2003) (citing Murphy, 536 S.W.2d at 32). "In a court-tried case, the judgment is presumptively correct, and the appellant has the burden to demonstrate that the judgment is erroneous." Id. (internal quotations omitted). "Interpretation of a contract is a question of law and is subject to de novo review."

24

Newco Atlas, Inc. v. Park Range Constr., Inc., 272 S.W.3d 886, 891 (Mo. App. W.D. 2008) (internal quotation omitted).

### B. Analysis

Parkway initially challenges the trial court's judgment on Count I for unjust enrichment by asserting that the judgment was against the trial court's findings of fact and against the weight of the evidence. Parkway maintains that substantial evidence supported each element of unjust enrichment. Parkway similarly posits that the trial court erred in entering judgment against it on Count II for quantum meruit. In its third challenge to the trial court's judgment on its equitable claims, Parkway disputes the trial court's finding that Parkway waived its claims for extra work by executing the Waiver. Because Point Three of Parkway's Cross-Appeal is dispositive, we address it first.

The Contract contained a provision stating that no extra work was to be conducted on the Project without written authorization. The trial court found that Parkway did not seek written authorization prior to completing the extra work, and provided Blackline no opportunity to accept, reject, or acquiesce to its performance. "It is the general rule . . . that where a construction contract requires a written change order, there is no right to recover for extra work without such a writing or waiver by the owner." Herbert & Brooner Constr. Co. v. Golden, 499 S.W.2d 541, 547 (Mo. App. K.C.D. 1973) (internal citations omitted). Neither Blackline nor Magnolia (the owner) waived the requirement that extra work on the Project required a written change order. The record clearly supports the finding that Parkway should have ceased work until it obtained written authorization from Blackline to exceed the fifty-percent threshold.

We now consider the Waiver executed by Parkway. The plain and unambiguous language of the Waiver prohibits Parkway from recovering payment for **all** Work (labor and materials furnished) on the Project up to June 16, 2015. Parkway signed the Waiver on June 16,

25

2015. The trial court found that the work for which Parkway sought compensation in Counts I and II was performed and completed before June 16, 2015. See Steak'm Take'm LLC, 524 S.W.3d at 589 (noting that we defer to the trial court's credibility findings). The evidence in the record shows that Parkway, at the earliest, exceeded the fifty-percent threshold in May 2015, and completed replacing all forty-three stacks by June 1, 2015. Parkway's performance is evidenced by the email Parkway sent Blackline detailing its performance in replacing the stacks. The plain and unambiguous language of the Waiver states that Parkway waived all rights to **any** claim for payment on work **completed** through June 16, 2015. "Where the language of the contract is unambiguous, the intent of the parties will be ascertained from the language of the contract alone and not from extrinsic or parol evidence of intent." Newco Atlas, Inc., 272 S.W.3d at 891. Accordingly, Parkway released its claims for the work it alleged was performed in Counts I and II as a result of the Waiver signed on June 16, 2015.

In an attempt to invalidate the Waiver, Parkway reasons that the Waiver is void for lack of consideration. We are not persuaded.

> To be valid a lien waiver must be supported by consideration or must have induced the party receiving it to have detrimentally changed its position in reliance upon the waiver. Where a lien claimant has not received consideration, it may successfully assert the invalidity of a lien waiver if the owner or other interested person has not paid out money or otherwise changed its position to his detriment in reliance on the waiver.

Tharp v. Keeter/Schaefer Invs., L.P., 943 S.W.2d 811, 818 (Mo. App. S.D. 1997) (internal quotations omitted).

Lien waivers are commonplace in construction contracts and other contracts involving multiple pay installments. See, e.g., Mid-West Eng'g & Constr. Co. v. Campagna, 397 S.W.2d 616, 629 (Mo. banc 1965); Tharp, 943 S.W.2d at 818; P & K Heating & Air Conditioning v. Tusten Townhomes Redev. Corp., 877 S.W.2d 121, 123 (Mo. App. E.D. 1994). Essentially, lien

26

waivers force the working party to present evidence of all work conducted up to the date of the lien waiver in exchange for fair payment of that work from the project account. The lien waiver guarantees the paying party that it has received notice of all work performed and completed up to the date of the lien waiver, and the working party has no further claims relating to the work performed up to that date.

Here, the Contract expressly provided that progress payments were "subject to receipt of such lien waivers, affidavits, warranties, guarantees or other documentation required by this Agreement or Blackline Design and Construction." The lien waiver later signed by Parkway in exchange for payment up until June 16, 2015 falls within the above Contract provision subjecting partial payments to "receipt of such lien waivers."

Substantial evidence supports a finding that Blackline and Magnolia detrimentally relied on Parkway's execution of the lien waiver to guarantee that Parkway presented all claims for the work Parkway conducted on the Project up until June 16, 2015. In exchange, Blackline agreed to pay Parkway for that work. Parkway agreed that it had identified for Blackline all work completed up until June 16, 2015, and that the reasonable cost for that work was $25,200. The Waiver was supported by consideration. See Tharp, 943 S.W.2d at 818.

We recognize that Parkway previously had complained to Blackline that it had reached the fifty-percent threshold regarding stack work, and that it was beginning to work beyond that threshold. Parkway had the opportunity to present Blackline all evidence of the extra stack work performed, and demand additional payment for that work. The trial court's judgment clearly characterizes Blackline's conduct as purposefully dilatory and designed to pressure Parkway into completing the Project. The trial court contrasted the professionalism of Parkway to the sarcastic and taunting communications from Blackline. Unfortunately for Parkway, the clear contrast in

27

the approach taken by the parties to the challenge presented in the Project does not negate the proven fact that Parkway knowingly signed the Waiver. And when Parkway signed the Waiver, Parkway agreed that the value of **all** work completed from the previous payment received up to and including June 16, 2015 amounted to $25,200. Parkway then accepted payment. Regardless of the pressure Parkway may have felt when it executed the Waiver, by doing so, Parkway waived any claims that Blackline owed it more money for work performed by Parkway and completed before June 16, 2015.

Parkway's Point Three on Cross-Appeal is denied. Because this issue is dispositive of Points One and Two, Parkway's Cross-Appeal Points One and Two are also denied.

## V.    Motion for Attorneys' Fees Taken with the Case

Prior to submission of this case, Parkway moved for appellate attorneys' fees, which was taken with the case. As discussed above, the Contract contains an attorneys' fee provision, granting attorneys' fees to the prevailing party for disputes arising from the Contract. Because we affirm the judgment of the trial court in all but one point, and because we affirm that Parkway was the prevailing party at trial, we conclude that Parkway is the prevailing party on appeal under the Contract. Accordingly, Parkway is entitled to an award of reasonable appellate attorneys' fees.

Although "appellate courts have the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." Berry, 397 S.W.3d at 433 (internal quotations omitted). We therefore remand the case to the trial court for an award of reasonable attorneys' fees for this appeal. See O'Brien v. B.L.C. Ins. Co., 768 S.W.2d 64, 71 (Mo. banc 1989) (noting that the trial court is the

28

expert on the subject of attorneys' fees). This remand is subject to our prior admonition that such award not include fees for appellate work that was related exclusively to the equitable claims raised on appeal.

## Conclusion

The judgment of the trial court is affirmed in part and reversed in part in accordance with this opinion. Further, the case is remanded to the trial court for determination of reasonable attorneys' fees on appeal.

KURT S. ODENWALD, Presiding Judge

Gary M. Gaertner, Jr., J., concurs.
Colleen Dolan, J., concurs.

29