**CHRISTIAN COUNTY, Missouri, Respondent,**

v.

**EDWARD D. JONES AND COMPANY, L.P., Appellant.**

**No. SC 87392.**

Supreme Court of Missouri, En Banc.

Aug. 8, 2006.

Rehearing Denied Sept. 26, 2006.

---

Jordan B. Cherrick, David P. Niemeier, David M. Harris, Trae D. Meyr, St. Louis, for appellant.

John C. Holstein, Thomas J. O'Neal, James E. Meadows, Springfield, for respondent.

Thomas M. Blumenthal, St. Louis, Wade L. Nash, Missouri Bankers Association, Jefferson City, for amicus curiae Missouri Bankers Association.

PER CURIAM.

Christian County filed suit against Edward D. Jones & Co., L.P., to recover funds deposited in an Edward Jones account by the Christian County treasurer. The circuit court sustained the County's motion for summary judgment. The judgment is reversed, and the case is remanded.

### FACTS

Christian County is a county of the State of Missouri that is subject to chapter 110, RSMO. Edward D. Jones & Co., L.P. is a Missouri limited partnership that is licensed by federal and state agencies as a securities dealer-broker.

On June 19, 1996, Gary Melton, who was then the treasurer for the County, met with Jones representative Steve Askren in order to open an account. Melton told Askren that he wanted to earn a higher rate of interest on county funds and that he would need access to the account. Melton opened an account with Jones in the name of the "Christian County Building Fund."

On June 21, 1996, the account was changed to show the customer as "CBF." The account documents provided that Melton was the agent for CBF and that Jones was authorized to follow Melton's instructions with respect to the account. On or about June 21, 1996, Melton delivered a check in the amount of $650,000 for deposit into the CBF account at Jones. The check was drawn on the County's account at Ozark Bank, which was the County's offi-cial depository, and was payable to Jones. The check was signed by Melton as the County treasurer. When the check was presented to Ozark Bank for payment, the bank did not immediately honor the check and instead contacted Christian County presiding commissioner Joe Nelson. Nelson examined a photocopy of the check and told bank officials that he had no knowledge of the check.

After conferring with bank officials, Nelson and William Barnett, another county commissioner, met with Mark Orr, the County prosecuting attorney. Orr advised Nelson and Barnett that the County should honor the check. Nelson directed Ozark Bank to honor the check and the funds were deposited into the CBF account at Jones.

The funds Melton deposited remained in the CBF account for nearly two weeks before any funds were transferred. During that time, County officials did not contact Jones or take further action regarding the account. On July 2, 1996, Melton, still serving as the County treasurer, instructed Jones to transfer $350,000 from CBF account to an account at Metropolitan National Bank in Springfield, Missouri. On July 3, 1996, Melton instructed Jones to transfer an additional $275,000 to the Metropolitan Bank account. Melton utilized these funds for personal use. When these transactions were made, neither Jones nor the County were aware of Melton's malfeasance.

The County eventually discovered the misappropriation and demanded that Jones return all of the money in its possession. Jones refunded all of the money left in the account, which amounted to $24,995.00, plus an additional $536.22 in interest. Jones denied liability for the remaining funds, asserting that Melton was responsible for the misappropriation. The

County recovered $256,207.72 from other banking facilities and from Melton, leaving the County with $368,837.28 in un-recovered funds.

The County filed suit against Jones in March 2000. The petition included one count, which alleged that Jones held funds for the County "as trustee *ex-maleficio* and has converted the same to its own use" because the account was not opened in accordance with section 110.130, RSMo 1994[1]. Section 110.130 requires counties to receive proposals from banking corporations that desire to be selected as the depositaries[2] of county funds.

Jones and the County filed motions for summary judgment. The circuit court sustained the County's motion. The court found that the authorized depositary for the County's funds was Ozark Bank; that Jones, which is not a bank, did not comply with sections 110.130 to 110.140 because it did not submit a bid to become the depositary of County funds; that from the date of receipt of the funds, Jones acted as the trustee *ex maleficio* and was obligated to return the funds to the County; and, that the transfers of funds from the account were made without Jones requiring a check signed by the county treasurer in violation of section 110.240. The court entered judgment against Jones for $368,837.28 plus prejudgment interest. Jones appeals.

## ANALYSIS

### I.  Standard of Review

In an appeal from a summary judgment, this Court reviews the record in the light most favorable to the party against whom judgment was entered, according that party the benefit of all rea-sonable inferences from the record. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In this case, the points on appeal do not indicate a factual dispute, but instead center on whether the County was entitled to judgment as a matter of law. Thus, the propriety of summary judgment is purely an issue of law and no deference is afforded to the circuit court's judgment. *Id.*

### II.  Propriety of Summary Judgment

Chapter 110 does not regulate banks or brokerages, but rather delineates the method in which a *county* may invest its funds. As such, the question before this Court is not whether Edward Jones is covered by chapter 110, but whether Christian County was authorized to invest with Edward Jones at all.

Counties "have no inherent powers but are confined to those expressly delegated by the sovereign and to those powers necessarily implied in the authority to carry out the delegated powers." *Premium Standard Farms, Inc. v. Lincoln Township of Putnam County*, 946 S.W.2d 234, 238 (Mo. banc 1997). Chapter 110 is the express delegation of power to a county for the investment of county funds. Under chapter 110, a county has no lawful right to deposit county funds except in a county depositary. *Ralls County v. Comm'r of Fin.*, 334 Mo. 167, 66 S.W.2d 115, 116 (1933) (interpreting the predecessor statute 85.12185 *et seq.*, RSMo 1929); *Huntsville Trust Co. v. Noel*, 321 Mo. 749, 12 S.W.2d 751, 754 (1928) (interpreting the predecessor statute 86.9582 *et seq.*, RSMo 1919). Only banking corporations and associations may serve as county depositar-

---

1.  All references to statutes are to RSMo 2000 unless otherwise indicated.

2.  Chapter 110 utilizes the word "depositary," not "depository." The statutory spelling will be utilized.

ies. Sec. 110.130. Therefore, Edward Jones, which acknowledges that it is a brokerage rather than a banking corporation or association, is precluded from being a depositary institution under chapter 110.

Furthermore, section 110.270 governs investment of county funds "not needed for current operation." That section, which was enacted in 1993, but which has not been subject to any previous appellate review, provides:

> Any county may place money of the county which it has determined is not needed for current operations in obligations described in section 15, article IV, Constitution of Missouri, outright or by repurchase agreement. Such obligations and agreements *shall be purchased through institutions in the county whose deposits may be insured by an agency of the United States government,* hereafter referred to as federally insured institutions, provided the county determines such purchases to be in the best interest of the county as determined by the county treasurer. When such federally insured institutions are unwilling or unable to provide such obligations and agreements, the county may purchase them from federally insured institutions in any adjacent county in Missouri. The investment authority granted by this section shall be in addition to the investment authority otherwise granted a county by law.[3]

Sec. 110.270 (emphasis added). Pursuant to this section, which Edward Jones disregards altogether, counties are limited to purchasing those investment "obligations" authorized by the Missouri Constitution[4] and to purchase them only from institutions whose deposits are insured by an agency of the United States. As part of its acknowledgment that it is not a bank, Edward Jones admits that, unlike banks, it is not federally insured. This admission precludes Edward Jones from being an authorized institution through which the county may invest funds not needed for current operation under section 110.270.

Because the county did not follow the statutory requirements for transfer and investment of public funds, the account set up with Edward Jones was void *ab initio.* See Bride v. City of Slater, 263 S.W.2d 22, 26 (Mo.1953) (citing *Donovan v. Kansas City,* 352 Mo. 430, 175 S.W.2d 874, 881 (1943)). Said another way, "Contracts of public officials entered without constitutional, statutory, or other authority are void." 73A C.J.S. *Public Contracts* sec. 3 (1990).

Whatever remedy the county may have had to secure the return of the funds is a moot issue because Jones has returned the funds. Jones paid out $625,000 at issue to treasurer Melton at Melton's request and direction. This was done while Melton was still serving as the county treasurer, while he was acting as the statutory agent of the county for the receipt and disbursement of county funds, and before anyone knew of Melton's malfeasance. After all, it goes without saying that a payment to the county treasurer is a payment to the county. *See Cole County*

---

3. Although the last sentence of section 110.270 authorizes investments "otherwise granted a county by law," there is to date no other law to which this section applies.

4. Approved obligations are set out in art. IV, sec. 15 of the Missouri Constitution and include: (1) "obligations of the United States government or any agency or instrumentality thereof;" (2) repurchase agreements "secured by United States Treasure obligations or obligations of United States government agencies or instrumentalities;" and (3) "banker's acceptances issued by domestic commercial banks possessing the highest rating issued by a nationally recognized rating agency." This list is not exhaustive.

*v. Schmidt,* 10 S.W. 888, 889 (Mo.1889); 20 C.J.S. *Counties* sec. 126 (1990). Moreover, Jones was justified in relying on well-established precedent in paying the funds directly to treasurer Melton in Melton's name, because even though Melton took the funds in his own name, he holds them as trustee for the county. 20 C.J.S. *Counties* sec. 126 (1990). That treasurer Melton later absconded with the county's funds does not implicate Jones in any way. Having paid over the county funds to the then county treasurer, Jones cannot be required to pay a second time.

The circuit court's grant of summary judgment in favor the County is reversed, and the case is remanded.[5]

All concur.

---

**5.** Jones also argues that the circuit court erred in awarding the County pre-judgment interest and by declaring Jones' affirmative defenses of waiver and estoppel inapplicable and entering summary judgment in favor of the County. As the judgment is reversed, there is no need at this time for this Court to address the issues of pre-judgment interest or the applicability of affirmative defenses.