William Randall COLLIER,
et al., Appellants,

v.

Edward M. MANRING, Edward M.
Manring, P.C., and Manring &
Parman, P.C., Respondents.

No. WD 70268.

Missouri Court of Appeals,
Western District.

May 4, 2010.

Stephen S. Brown, Kansas City, MO, for appellant.

Robert A. Brown, Jr., St. Joseph, MO, for respondent.

Before LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., and ALOK AHUJA, JJ.

JAMES M. SMART, JR., Judge.

In 1999, John W. Collier and Kathryn Collier were senior citizens owning farm land and other property located in Gentry County, Missouri. The Colliers had three adult children: Randall Collier, Rodney Collier, and Rhonda Haight. In late 1999, the Colliers moved off their farm into a house in Albany, Missouri. At about that same time, the Colliers were exploring the adoption of a trust to hold their assets and ultimately govern the distribution of their assets. John Collier consulted with attorney Edward M. Manring, who prepared trust documents which the Colliers executed in December 1999. The Colliers were co-grantors and co-trustees of a revocable inter-vivos trust.

Pursuant to the terms of the trust, and subject to the rights of the grantors to revoke the trust and to withdraw property from the trust, the property would remain in trust until the passing of the survivor of the two grantors. At that time, a certain farm property called the "north farm" was to be distributed to Rhonda; the house in Albany was to be distributed to Randall; and another tract called the "south farm" was to be held in trust for the benefit of Rodney Collier during his lifetime. At the death of Rodney, the south farm was to be distributed to any issue of Rodney, and, if Rodney had no issue, then to Rhonda's issue. Rodney was married but had no issue. The disposition of the south farm was apparently designed to bypass Rodney's wife in the distribution of the estate.

The day after the trust documents were executed, Kathryn resigned as co-trustee. While often in such trusts the resignation of one spouse results in the remaining spouse serving as sole trustee, in this case the Collier's daughter, Rhonda Haight, became successor co-trustee with her father. Several days later, Kathryn passed away. Two years later, in 2002, John Collier contacted Mr. Manring with a desire to alter the terms of the estate plan. At this time, Rodney had become divorced. Therefore, apparently, Mr. Collier desired to leave the south farm and adjoining property (hereafter collectively referred to as "south farm") to Rodney outright in fee simple. Mr. Collier and Mr. Manring sought to create a separate individual trust for the benefit of Rodney, which, instead of leaving a life interest to Rodney in the particular property, would leave the south farm outright to Rodney in fee simple absolute, eliminating any separate remainder interest that might fall to the Haights.

Mr. Manring drafted a separate trust, which was executed in October 2002. Mr. Manring prepared deeds to transfer the property from the original trust back to John W. Collier, individually, and then from Mr. Collier individually to the new trust. Mr. Manring proceeded in accordance with the understanding that Mr.

Collier, as surviving grantor, had the right to withdraw property from the revocable trust as he wished. Thus, Mr. Manring assumed that Mr. Collier should not have needed Rhonda Haight's or anyone else's permission to withdraw property from the original trust. Although Rhonda Haight remained a co-trustee of the original trust and was present with her father at the time the deeds were executed, Mr. Manring did not ask Mrs. Haight to join in the execution of deeds transferring the properties out of the original trust. Mrs. Haight asked if she needed "to sign anything" and was told that she did not.

In March 2004, John W. Collier passed away. In addressing the matters of the trust, a dispute emerged. Rodney and Randall believed that the new trust governed the distribution of the south farm property, which had been placed in the new trust, while Rhonda Haight now believed that the south farm property still remained in the original trust and was subject to its terms because she never executed deeds as co-trustee to transfer the property. Mrs. Haight contended that the purported transfers in 2002 were invalid.

On April 27, 2005, Randall and Rodney sued Rhonda Haight and her children (collectively, "the Haights") and Edward M. Manring; Edward M. Manring, P.C.; and Manring & Parman, P.C. (collectively, "the Manring defendants"). The petition's first seven counts made allegations against the Haights. Count I was for declaratory judgment and sought a declaration that the south farm belonged to the 2002 Trust. Count II was a quiet title action and requested that the court quiet title of the south farm in favor of the 2002 Trust. Count III was an action for accounting and sought discovery related to assets and accounts of the 1999 Trust and the 2002 Trust. Count IV was an action for breach of fiduciary duty, alleging that Rhonda Haight breached her fiduciary duties as co-trustee. Count V was an action for a temporary restraining order and injunction, seeking to prevent Rhonda Haight from using trust assets. Counts VI and VII were claims against the John W. Collier Estate, alleging that, as trustee of the 1999 Trust, it breached the deed warranties and covenants in the trustees as to the south farm and the adjoining property.

Count VIII was an action for legal malpractice against the Manring defendants. It was designated an alternative count. It alleged that if the court were to determine that the transfers were invalid, then the count for legal malpractice would apply in the alternative to the other counts. The count alleged that if Manring had asked Rhonda Haight to execute the deeds as co-trustee, the transfers would have been effective. Rodney's and Randall's legal malpractice claim against the Manring defendants alleged that Manring: (1) negligently prepared the 1999 Trust and 2002 Trust and accompanying documents; (2) negligently prepared deeds that were intended by John W. Collier to transfer real estate from the 1999 Trust to the 2002 Trust; and (3) negligently advised John W. Collier that his intent as grantor had been accomplished and that he had validly transferred the south farm and adjoining property to the 2002 Trust so that Rodney Collier would receive the property outright. Rodney and Randall sought, as their primary element of damages against the Manring defendants, their reasonable attorneys' fees, costs, and expenses incurred in prosecuting the claims against the Haights.

In October 2007, after two and one-half years of litigation, the Colliers and the Haights reached a "Family Settlement Agreement," which was approved by the Gentry County Circuit Court. The settle-

ment involved all parties to the first seven counts of the lawsuit and disposed of all claims contained in Counts I–VII of the petition, including counter claims and motions filed by the Haights. It did not involve the Manring defendants. Pursuant to the settlement, Randall and Rodney and the Haights agreed to the following relevant items:

To release one another from claims stemming from the estates of John W. Collier and Kathryn Collier;

To execute quit-claim deeds transferring the South Farm and the Adjoining Property to Rodney Collier and to sign a stipulation requesting the court to quiet title in these properties. The court subsequently quieted title to the South Farm and Adjoining Property in the name of Rodney Collier;

To execute quit-claim deeds transferring property referred to as the North Farm to Rhonda Haight. The court subsequently quieted title to the North Farm in the name of Rhonda Haight;

To identify certain sales proceeds as assets of the 1999 Trust and distribute them to pay attorneys' fees and to Rhonda Haight's four children;

To count certain bank funds as rents and income from trust property and distribute them to Rodney Collier (for those pertaining to the South Farm) and Rhonda Haight (for those pertaining to the North Farm);

To pay Randall Collier money from an annuity;

To pay various trust accounting expenses;

To distribute any damages recovered from the suit against Manring in a specified manner.

After the settlement, the only claims remaining were Randall's and Rodney's and the Haights' separate legal malpractice claims against the Manring defendants.

The Manring defendants moved for partial summary judgment on the issue of attorneys' fees, arguing that the Colliers were not entitled to recover attorneys' fees as damages because they had failed to show entitlement to such fees under any permissible basis. The Colliers moved for cross-summary judgment on the same issue, arguing that their attorneys' fees were recoverable as an element of damages because they were incurred in the prosecution of the claims against the Haights, which litigation was caused by Manring's negligent acts. The Colliers claimed the fees were recoverable under the "special circumstances" and "collateral litigation" exception to the general rule that each party pays its own attorneys' fees.

On May 15, 2008, the trial court entered partial summary judgment in favor of the Manring defendants, ruling that, as a matter of law, the Colliers could not recover attorneys' fees. The Colliers and Haights dismissed any claim for any damages beyond attorneys' fees. Having determined all remaining issues under Count VIII, and having settled all other issues, the Colliers and the Haights subsequently dismissed their remaining claims, rendering the judgment final. Rodney and Randall Collier appeal.

## Analysis

No dispute exists as to the material facts that frame the issues on appeal. We are not called upon to address the underlying issues of legal malpractice such as those related to breach of duty and causation. We address only the issue of whether the trial court properly ruled that attorneys' fees could not legally be submitted as damages if indeed ultimately there is determined to be a submissible case of legal malpractice. The issue of whether the

trial court properly entered judgment for the Manring defendants on the basis that no such damages could be recoverable is an issue of law which we review *de novo*. *Christian County v. Edward D. Jones & Co., L.P.*, 200 S.W.3d 524, 527 (Mo. banc 2006).

The settlement agreement was an agreement between all parties except the Manring defendants. After the family settlement agreement was entered into, plaintiffs Randall and Rodney shifted their attention to the Manring defendants, claiming that the Manring defendants are liable for the attorneys' fees incurred in the litigation against the Haights over the estate plan. Despite the fact that their petition all along had asserted that their claim against these defendants was an alternative, contingent claim, dependent upon the court determining that the purported transfers into trust were invalid, and despite the fact that the litigation over the purported transfers had been resolved by agreement rather than by adjudication, the plaintiffs, through oversight, did not move to amend their petition to make clear that the legal malpractice claim now stood on its own (because there was no extant judicial determination of the invalidity of the transfers that would be binding on the defendants).

Nevertheless, despite the failure to remove the "alternative" and "contingency" language from the petition, it is evident that Randall and Rodney intended to assert a claim of professional negligence against the Manring defendants as to the cost of litigating against the Haights over the disposition of the property in question. The plaintiffs obviously wish to allege that the transfers *were* invalid (without the necessity of a court so ruling in adjudicating the counts against the Haights), and that such invalidity was caused as a result of the alleged negligence of Mr. Manring.

The fact that there was no such amendment of the petition, however, may have caused some confusion for the trial court as the court sought to determine whether the legal negligence claim was a claim for damages for "collateral litigation."

One element of damage sometimes sought in claims of legal malpractice is the cost of dealing with any litigation caused by the alleged negligence. For instance, if there is a title defect to real estate caused by alleged negligence, the plaintiff will generally seek to recover from the tortfeasor the costs of the legal work to clear the title. Generally, reasonable costs of a necessary collateral proceeding are recoverable, while the fees incurred in suing the attorney for malpractice are generally not recoverable. The Restatement (Second) of Torts, section 914 (1979), provides an apt summary:

> (1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of litigation.
>
> (2) *One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.*

(Emphasis added.) Comment b on Subsection (2) of section 914 provides:

> The rule stated in this Subsection applies when the preceding action was brought against the present plaintiff either by a third person or by the state, and *also when the present plaintiff has been led by the defendant's tort to take legal proceedings against a third person.*

(Emphasis added.) "The Restatement recognizes that the injured party in these circumstances can recover the amount rea-

sonably expended to satisfy a judgment as well as the costs of defense." *Seidel v. Gordon A. Gundaker Real Estate Co.*, 904 S.W.2d 357, 363 (Mo.App.1995) (*citing* Restatement (Second) of Torts section 914(2) (1979)).

▮ The Restatement rule is consistent with Missouri law. "[T]he general rule in Missouri is that attorneys' fees are recoverable only when a statute specifically authorizes recovery or when attorneys' fees are provided for by contract." *Essex Contracting, Inc. v. Jefferson County*, 277 S.W.3d 647, 657 (Mo. banc 2009). However, an exception to the rule is often called the "collateral litigation" exception. *Id.* "Where the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorneys' fees necessarily and in good faith incurred in protecting himself from the injurious consequence thereof are proper items of damages." *Id.* For the collateral litigation exception to be applicable, the plaintiff must have incurred attorneys' fees in a different cause of action, involving a different party, caused by a breach of duty by the defendant. *See Goralnik v. United Fire & Cas. Co.*, 240 S.W.3d 203, 212–13 (Mo.App.2007).

▮ The exception for collateral litigation proximately caused by the tortious acts is also merely a matter of common sense in accordance with traditional principles allowing recovery of damages proximately caused by the negligent act. The plaintiffs must prove the breach of duty, and further must prove the damages proximately flowing from the breach. There is no hypertechnical formula about fees that may be recovered as an element of damages; neither is it an esoteric concept embedded in the shrouds of legal history. It is simply a logical exception to the general rule, and the Restatement has sought to state the principle.

Plaintiffs Randall and Rodney alleged that they were caused to pursue litigation against the Haights as a direct result of the tort of the Manring defendants. At the same time, the plaintiffs had standing to pursue a cause of action for professional negligence against the Manring defendants. *See Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 627–29 (Mo. banc 1995). Thus, the plaintiffs had one set of claims against the Haights and one set of claims against the Manring defendants. And although there was a relationship between the two sets of claims, these sets of claims differed in nature and were against two different sets of defendants.

The first seven counts of the petition were all brought against the Haights, and the Haights only, seeking to compel the Haights to act in accordance with Mr. Collier's expressed intent. The eighth count was brought against the Manring defendants and against them only. There was no need, of course, to join the eighth count in the same petition with the seven counts against the Haights; but there also was no apparent reason that the eighth count could not be joined in the same petition. To delay to bring the action could have risked problems with the statute of limitations. *See, e.g., Dixon v. Shafton*, 649 S.W.2d 435, 439 (Mo. banc 1983) (relating to the accrual of cause of action for legal malpractice).

Here, the trial court reasoned that the action against the Manring defendants was not a collateral action because the counts against the Haights and the Manring defendants were contained in one petition. The court did not focus on the fact that even though plaintiffs Randall and Rodney asserted their claims against both sets of defendants in one petition, and even though the claims had some common factual background, they really were two dis-

tinct sets of claims against two distinct sets of defendants.

■ The plaintiffs alleged they were forced to sue the Haights (in order to carry out John Collier's desires) because of Mr. Manring's alleged failures. Of course, the plaintiffs did not have to bring an action against the Manring defendants *at that time*. As we have noted, they could have waited some time and then filed a separate action against the Manring defendants, although to do so might have created some risk as to the issue of timeliness. Also, plaintiffs could have filed two separate petitions with separate case numbers at the same time: one against the Haight defendants and one against the Manring defendants. If plaintiffs had taken this route, it would be clear that the collateral litigation exception applied to their suit against the Manring defendants.

It does not matter that the plaintiffs Collier were plaintiffs instead of defendants in the collateral action, as long as they were pleading that they were required to "bring" or "defend" an action as a result of the alleged negligence. *See* RESTATEMENT (SECOND) OF TORTS section 914(2) (1979). It also does not matter that the underlying matter had not been concluded at the time the suit for malpractice was filed. It was obvious from the pleading that the underlying action against the Haights would need to be concluded before one could determine the existence of the elements of the claim against the Manring defendants. *Dixon*, 649 S.W.2d at 439.

The plaintiffs might have aided the trial court had they amended their petition after settling with the Haights so that the claim against the Manring defendants was no longer pleaded specifically as a contingent, alternative claim. Had they moved to amend count VIII to assert a claim that was no longer an alternative claim, contingent on any finding of the trial court relat-

ed to the underlying litigation, it might have helped make clear that the malpractice claim *was* collateral to the claim as to the interests in the property. Nevertheless, despite the technical pleading deficiency, the court should have recognized that the claim against the Manring defendants was collateral to the underlying seven counts against the Haights.

■ We conclude that the court erred in dismissing count VIII because the collateral litigation exception would allow recovery of necessary and reasonable fees caused by negligence. We determine that we should vacate and remand the case against the Manring defendants. On remand, the plaintiffs must show a breach of duty to John W. Collier by the defendants. The plaintiffs must also show (1) that undertaking the collateral litigation was the natural and proximate result of the defendant's alleged wrong or breach of duty; (2) that the fees were necessarily and in good faith incurred to protect the plaintiffs from injury; and (3) that the amount of the fees (attributable specifically to the litigation to correct any legal problem caused by the alleged breach of duty) was reasonable in light of the circumstances and necessities of the situation. *See Beavers v. McGinnis*, 277 S.W.3d 308, 310 (Mo.App.2009).

The Manring defendants suggest that even apart from the issue of whether the plaintiffs can show that any negligence was committed by Mr. Manring (which they do not concede), the plaintiffs must establish that any legal fees were proximately caused by any such negligence, because, among other factors, the seven counts of the petition directed at the Haights contain allegations of wrongful conduct by Rhonda Haight in breaching *her* duties as a fiduciary (and in making the litigation necessary). The causation issues, as well as the issue of negligence, are not before us in the appeal. The only issue we decide

here is whether *as a matter of law* the plaintiffs will be precluded in principle from seeking attorney fees by the general rule that each side will ordinarily be responsible for its own attorneys' fees. Our ruling is that they are not so precluded.

The judgment is vacated and the case is remanded for further proceedings.

All concur.