

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| WI 909 WALNUT, LLC, ET AL., ) | |
| ) | |
| Appellants, ) | |
| ) | **WD87317** |
| v. ) | **OPINION FILED:** |
| ) | **JUNE 24, 2025** |
| 909 WALNUT TOWER, LLC, ET AL., ) | |
| ) | |
| Respondents. ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Charles H. McKenzie, Judge**

**Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding,**
**Janet Sutton, Judge, James Edward Welsh, Special Judge**

WI 909 Walnut, LLC and PSM SPE 1, LLC, the plaintiffs in the action below, appeal the judgment of the Jackson County Circuit Court. They argue in their first point on appeal that the trial court erred in finding that the defendants did not breach their contract. The plaintiffs argue in their second point on appeal that the trial court erred in awarding the defendants their attorney's fees and expenses. We dismiss the plaintiffs' challenge to the circuit court's judgment on the breach of contract claim, because the plaintiffs failed to timely appeal that judgment. We affirm the circuit court's separate judgment awarding attorney's fees to the defendants. We also find that the defendants are entitled to an award of their appellate attorney's fees; we remand to the circuit court for it to determine the amount of the defendants' recoverable fees.

**Facts**

In November 2021, WI 909 Walnut LLC, WI 929 Walnut LLC, Worcester Investments LLC, PSM SPE 1 LLC, and 909 Walnut Condominium Association ("Plaintiffs") filed a petition in the Jackson County Circuit Court naming 909 Walnut Tower, LLC, 911 E. Walnut, LLC and Glenn Solomon ("Defendants") as the defendants. Plaintiffs later filed a First Amended Petition with leave of court. Count I of the First Amended Petition alleged breach of contract regarding certain tax increment financing payments. Count II alleged breach of contract related to alleged water leaks in the roof area of 909 Walnut Tower. Count III alleged breach of declaration related to alleged water leaks in the roof area of 909 Walnut Tower. Count IV alleged negligent misrepresentation related to alleged water leaks in the roof area of 909 Walnut Tower and certain tax increment financing payments. Count V alleged fraud related to alleged water leaks in the roof area of 909 Walnut Tower and certain tax increment financing payments.

Defendants filed answers and a counterclaim for breach of contract against Worcester Investments LLC which related to certain post-closing operations costs incurred by Defendants. Significant litigation followed. Jury trial was scheduled for May 2023. In April 2023, Plaintiffs dismissed Counts II, III, IV, and V without prejudice.

In January 2024, the circuit court held a bench trial on the parties' respective breach of contract claims (Count I of Plaintiffs' First Amended Petition and Defendants' counterclaim), which were the only claims remaining in the action. The court entered its

judgment on the breach of contract claims on February 27, 2024.[1]  In its judgment, the

trial court set forth the following facts:

> This case involves a real estate transaction between Defendants 909 Walnut and 911 Walnut (collectively "Defendants") as sellers and Plaintiffs WI 929 Walnut, LLC, PSM SPE 2 LLC and Worcester Investments LLC (collectively "Plaintiffs").  Plaintiffs WI 929 Walnut, LLC and PSM SPE 2 LLC were assigned rights pursuant to their respective purchase agreements with Worcester Investments LLC ("Worcester Investments").  On December 20, 2018, Defendant 909 Walnut sold real estate located at 909 Walnut Street … ("909 Walnut Tower Property") to Worcester Investments.  In order to effectuate the transaction, 909 Walnut and Worcester Investments entered into a Purchase and Sale Agreement, outlining the terms of the transaction.  On December 20, 2018, Defendant 911 Walnut sold real estate located at 915 and 929 Walnut Street … ("929 Walnut Property") to Worcester Investments.  In order to effectuate the transaction, 911 Walnut and Worcester Investments entered into a Purchase and Sale Agreement, outlining the terms of the transaction.  There were subsequent amendments to those contracts to which the Parties agreed.
>
> During its ownership of the properties, the Defendants had been receiving public incentives in the form of tax increment financing (TIF) payments made by the City of Kansas City, Missouri ("City").  To receive the TIF payments, the Sellers, during their ownership of the Properties, would require their commercial tenants to report certain financial information to the City.  The City would receive the information from each tenant to determine the economic activity taxes each respective tenant had paid during the applicable reporting period.  The City would then calculate and issue tax increment financing payments to a trustee, who would immediately use the same to pay down the outstanding construction bonds used to pay the construction debt.

---

[1] Though the circuit court denominated the February 27, 2024 judgment as a "partial judgment," as we note, *infra*, the circuit court noted that the only issue unresolved by the February 27, 2024 judgment was attorney's fees.  As we explain, *infra*, Rule 74.16 in effect at the time of trial required any request for attorney's fees in this case to be made by a post-judgment motion treated as an independent action.  The pending attorney's fees claim did not, therefore, suspend the finality of the February 27, 2024 judgment, notwithstanding its designation as a 'partial' judgment.  See *Wiseman v. Mo. Dep't of Corrections*, 710 S.W.3d 29, 38 n.8 (Mo. App. W.D. 2025) (observing that there is ""no lawful method which . . . authorize[s] the trial court to 'hold in abeyance' [a] judgment which [has] become final'") (quoting *Lacher v. Lacher*, 785 S.W.2d 78, 80 (Mo. banc 1990)).

Prior to any agreement to purchase the subject real estate and during 909 Walnut's ownership of the 909 Walnut Tower property, it had entered into a lease agreement with a company known as [P.M.]. [P.M.] vacated its space at the 909 Walnut Tower Property in May 2016, and reported the same to the City. However, the City mistakenly continued to issue tax increment financing payments to 909 Walnut for [P.M.'s] economic activities even though the company had moved to another location. The Defendants were not aware that a portion of the tax increment financing payments that it had received was mistakenly being attributed to [P.M.] occupying its space at 909 Walnut. The reason the Defendants were not aware of the source of the payments was the result of the TIF regulations which prohibited disclosure of that information to the Defendant. In total, the City mistakenly paid $178,716.77 to the Defendants for [P.M.'s] supposed occupation of its former space at 909 Walnut.

After closing the sale of the Properties, the City learned of its error. In order to recoup for their mistake, it withheld certain tax increment financing amounts which were otherwise owed to Plaintiffs including the $178,716.77.

Plaintiffs bring a single count of Breach of Contract against Defendants because they assert that Defendants breached the contracts when they did not reimburse them for the $178,716.77. Plaintiffs base that assertion on their belief that Defendants are liable under various terms in the contracts to reimburse Plaintiffs for the amounts withheld. Defendants deny that they breached any contract between themselves and Plaintiffs.

The parties made the following factual stipulation:

j. Defendants did not provide any false, inaccurate, or misleading documents to the City and/or the TIF Commission regarding tax increment financing reporting and its tenants, including, but not limited to, [P.M.].

The parties made the following legal stipulations:

c. Plaintiffs allege that Defendants breached, or have otherwise materially failed to meet their contractual obligations detailed in Sections 5, 8(i), 8(j) (911 Walnut Purchase and Sale Agreement only), 10(a), 10(c), 12, and 15(g) of the Purchase and Sale Agreements. … The Plaintiffs do not allege that Defendants are in breach of any other provision of those contracts.

d. Plaintiffs allege that Defendants breached, or have otherwise materially failed to meet their contractual obligations in Section 1 of the PI

4

Assignment. … The Plaintiffs do not allege that Defendants are in breach of any other provisions of those contracts.

e. During Defendants 909 Walnut Towers, LLC and 911 E. Walnut, LLC's ownership of the property, Defendants did not have a legal and/or contractual obligation to report to the City or the TIF Commission a commercial tenant's vacation of the space.

The trial court found that Defendants did not breach the contract:

The Court finds the Defendants did not provide any false, inaccurate, or misleading documents to the City and/or the TIF Commission regarding the reporting for TIF or the tenants. The Court further finds that Defendants did not have a legal and/or contractual obligation to report to the City and/or the TIF Commission that a commercial tenant had vacated the space. The Court, after a review of the contracts and the specific sections of the contract in which the Plaintiff alleges were breached finds that the Defendants did not breach the contract. Therefore, the Court finds for the Defendant on Plaintiff's claim for Breach of Contract.

In their counterclaim, Defendants alleged Plaintiffs breached the contract by not paying $13,035.58 in post-closing expenses. The trial court found that Defendants did not meet their burden of proof. It found for Plaintiffs' on Defendants' counterclaim for breach of contract

The circuit court's February 27, 2024 judgment found that, as the prevailing party, the Defendants were entitled to recover their attorney's fees under a fee-shifting provision in the purchase contracts. The February 2024 judgment states that "an additional hearing is necessary to determine the amount of attorney fees owed to Defendant for its defense of the case as the prevailing party. The Parties shall contact the Court to obtain a mutually agreeable date for an additional hearing on the issue of attorney fees."

5

Following the entry of the circuit court's February 27, 2024 judgment, Defendants filed a Motion for Attorney's Fees on March 19, 2024. No other post-judgment motions were filed by either party.

While Defendants' attorney's fee motion was pending, Plaintiffs filed a notice of appeal on April 5, 2024, which was assigned Docket Number WD87103 in this Court. This Court sent a letter to all parties, asking them to file suggestions as to whether the February 2024 judgment was final, given the unresolved attorney's fee issue. Rather than responding to the Court's request for suggestions, Plaintiffs voluntarily dismissed the appeal on April 25, 2024.

The circuit court entered a further judgment on May 24, 2024. This judgment restated the circuit court's rulings on the parties' breach of contract claims. The May 2024 judgment also made the following award of attorney's fees to Defendants:

> The Court finds that the main issue in dispute was both the condition of the property and contract for the Purchase and Sale of the property at issue. The Court further finds that these issues are closely related and that much of the work on the case overlapped. The Court further finds that Defendants are entitled to attorneys fees based on the Purchase and Sale Agreement that was at issue in this matter. The Court reviewed the itemized list of work completed and attorney's fees charged and finds the rates for this type of work to be fair and reasonable. … The Court determined that Defendants are entitled to attorney fees in the amount of $379,643.54.

Plaintiffs filed their second notice of appeal on July 2, 2024.

**Standard of Review**

6

"When reviewing a court-tried case, we will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Odermann v. Mancuso*, 670 S.W.3d 461, 471 (Mo. App. W.D. 2023) (internal quotation marks omitted). "A claim that the trial court erroneously declared or applied the law is reviewed *de novo.*" *Id*. (internal quotation marks omitted). "[E]rroneous declaration or application of the law is not itself sufficient to justify reversal." *Id*. (internal quotation marks omitted). "We will find reversible error only when it materially affects the merits of the action with a firm belief that the decree or judgment is wrong." *Id*. (internal quotation marks omitted).

### Point I

In their first point on appeal, Plaintiffs argue the trial court erred in finding that Defendants did not breach their contract. Plaintiffs contend that the trial court erroneously applied the law. Plaintiffs claim that Defendants breached the terms of the PI Assignment by refusing to pay $178,716.77 owed to Plaintiffs.

Plaintiffs' appeal of the circuit court's judgment on their breach of contract claim is untimely, and we are required to dismiss their appeal of the underlying judgment. The circuit court fully disposed of the final substantive claims in the case (the parties' respective breach of contract claims) in the judgment entered on February 27, 2024. Following the entry of that judgment, the only remaining issue in the case was Defendants' right to attorney's fees under the purchase contracts' fee-shifting provision.

7

The pendency of the attorney's fee issue, and the filing of Defendants' attorney's fee motion, did not affect the finality of the February 27, 2024 judgment. Earlier cases held that "[a]n unresolved claim for attorney's fees can arrest the finality of a judgment[.] . . . If a request for attorney's fees is properly pleaded and pursued at or after trial, the trial court must resolve or dispose of the issue before a judgment can be deemed final." *Jefferson City Med. Grp., P.C. v. Brummett*, 665 S.W.3d 380, 384 (Mo. App. W.D. 2023) (citations and internal quotation marks omitted). Under that earlier rule, where "a judgment . . . f[ound] a party liable for attorney's fees, but d[id] not make a fee award of a specific sum," the judgment was not considered final or appealable. *Id.* at 385.

Despite the earlier caselaw, the effect of an unresolved request for attorney's fees on the finality of a judgment is now governed by Rule 74.16(b). Rule 74.16 provides:

> **(a) Claim to be made by motion.** A claim for attorney fees and related nontaxable expenses must be made by motion filed under this Rule 74.16, unless the substantive law requires those fees to be proved at trial as an element of damages.
> **(b) Motions and proceedings thereon.**
> (1) *Time for filing.* A motion seeking attorney fees under this Rule 74.16 must be filed no later than 30 days after the entry of judgment on the underlying claim.
> (2) *Contents of the motion.* The motion must specify the statute, rule, or other ground entitling the movant to the award and state the amount sought.
> (3) *Nature of the motion.* Except for purposes of Rule 51.05(a), a motion filed under this Rule 74.16 is an independent action and not an authorized after-trial motion subject to Rules 78.04, 78.06, or 81.05.

(Emphasis in original).

Rule 74.16 became effective on July 1, 2022, which was before trial began or the trial court's judgment was entered. Article V, section 5 of the Missouri Constitution grants the Missouri Supreme Court the authority to establish procedural rules and provides that such rules "shall have the force and effect of law." *State ex rel. Union Elec. Co. v. Barnes*, 893 S.W.2d 804, 805 (Mo. banc 1995). Generally, a procedural rule applies to all pending proceedings whether commenced before or after the adoption of the rule. *State v. Casaretto*, 818 S.W.2d 313, 316 (Mo. App. E.D. 1991). We find Rule 74.16 to be procedural and thus applicable to this current case which was a pending proceeding at the time the Rule took effect. *Accord*, *Wiseman v. Mo. Dep't of Corrections*, 710 S.W.3d 29, 36 (Mo. App. W.D. 2025).

Rule 81.05(a)(1) provides that "[a] judgment becomes final at the expiration of thirty days after its entry if no timely authorized after-trial motion is filed." Under Rule 74.16(b)(3), a motion for attorney's fees made under Rule 74.16 is not considered an "authorized after-trial motion" – and the attorney's fee motion would accordingly not delay or prevent the underlying breach of contract judgment from becoming final. "Pursuant to . . . Rule [74.16], a motion for attorney's fees is an independent action, and an unresolved claim for attorney's fees no longer arrests the finality of a judgment on the merits, even where the claim is pled in a petition." *Wiseman*, 710 S.W.3d at 35-36 (footnote omitted). Thus, by operation of Rule 81.05(a), the February 27, 2024 breach of contract judgment became final thirty days after its entry on March 28, 2024. Plaintiffs then had ten days within which to file their notice of appeal under Rule 81.04(a).

9

Although Plaintiffs *did* initially file a timely appeal of the underlying judgment on April 5, 2024, they voluntarily dismissed that appeal on April 25, 2024. *See* No. WD87103. The notice of appeal which initiated *this* appeal, filed on July 2, 2024, came too late.

"The timely filing of a notice of appeal is a jurisdictional requirement. As a result, an appellate court must dismiss an appeal if the notice of appeal is untimely." *P.D.E. v. Juvenile Officer*, 669 S.W.3d 129, 132 (Mo. banc 2023) (citing *Spicer v. Donald N. Spicer Revocable Living Tr.*, 336 S.W.3d 466, 471 (Mo. banc 2011)). Because Plaintiffs' notice of appeal was untimely with respect to the circuit court's underlying breach of contract judgment, we are required to dismiss their appeal to the extent it challenges the February 27, 2024 judgment.

We recognize that not *all* claims for attorney's fees are subject to Rule 74.16. Rule 74.16(a) states that the procedures for requesting attorney's fees specified in the Rule are applicable "unless the substantive law requires those fees to be proved at trial as an element of damages." This exception is inapplicable here. Rule 74.16 distinguishes between the attorney's fee motions subject to the Rule, and "the entry of judgment *on the underlying claim*." Rule 74.16(b) (emphasis added). Attorney's fees may be part of a party's "underlying claim" in certain situations, for example where the defendant's wrongful conduct caused the plaintiff to incur attorney's fees in collateral litigation (such as in a legal malpractice or malicious prosecution action). *See*, *e.g.*, *Collier v. Manring*, 309 S.W.3d 848, 852-53 (Mo. App. W.D. 2010) ("One element of damage sometimes sought in claims of legal malpractice is the cost of dealing with any litigation caused by

10

the alleged negligence."); *Lau v. Pugh*, 299 S.W.3d 740, 750 (Mo. App. S.D. 2009) (holding that "attorney fees and other legal expenses incurred in clearing a disparaged title are recoverable as special damages in slander of title actions"); *Doss v. Epic Healthcare Mgmt. Co.*, 997 S.W.2d 523, 527 (Mo. App. S.D. 1999) ("Attorney fees are a compensable element of damages in a suit for malicious prosecution."; citing *Turman v. Schneider Bailey, Inc.*, 768 S.W.2d 108, 113 (Mo. App. W.D. 1988)). In such cases, attorney's fees may be an element of damages which a claimant must prove at trial.

Attorney's fees awarded to a party who prevails on an underlying claim are not themselves *part of* that underlying claim, however. Under a typical contractual fee-shifting provision like the one at issue here, the prevailing party's right to attorney's fees *arises out of* the successful resolution of the underlying claim; the right to attorney's fees arises only *after* the underlying claim has been resolved. Caselaw defining the term "prevailing party" as used in contractual and statutory fee-shifting provisions recognizes that the party must achieve success on an underlying claim *before* becoming a prevailing party. *See, e.g., Parkway Constr. Servs., Inc. v. Blackline LLC*, 573 S.W.3d 652, 666–67 (Mo. App. E.D. 2019) ("This Court more recently defined a 'prevailing party' for the purposes of a contractual award as 'the party prevailing on the main issue in dispute, even though not necessarily to the extent of its original contention.'" (citation omitted)); *Brooke Drywall of Columbia, Inc. v. Bldg. Constr. Enterps., Inc.*, 361 S.W.3d 22, 27 (Mo. App. W.D. 2011) ("A 'prevailing party' is one who obtains a judgment from the court, regardless of the amount of damages." (citation omitted)). Notably, in *Wiseman*, we

recently held that the Missouri Human Rights Act "does not require attorney's fees to be proved at trial as an element of damages." 710 S.W.3d at 36 n.6. Like the contractual fee-shifting provision at issue here, the attorney's fee provision involved in *Wiseman* authorized the "award [of] court costs and reasonable attorney fees to *the prevailing party*." § 213.111.2, RSMo.

We also note that, in many cases – like here – the prevailing party in a breach of contract case may be *the defendant*. A breach of contract defendant may not be seeking *any* damages at trial, and it would make little sense to state that such a defendant must prove their attorney's fees at trial as an "element" of their damages.

For these reasons, we conclude that the right to attorney's fees under a typical contractual fee-shifting provision, which authorizes the award of fees to the party prevailing on a contractual dispute, are not the sort of fees which "the substantive law requires . . . to be proved at trial as an element of damages." Rule 74.16(a). Accordingly, Defendants were required to seek their fees through a post-judgment motion filed under Rule 74.16. And – importantly – the filing of that post-judgment motion did not have the effect of staying the finality of the underlying judgment on Plaintiffs' breach of contract claim.

We recognize that the circuit court's May 24, 2024 judgment restated the court's rejection of Plaintiffs' breach of contract claim. But the breach of contract claim had been fully resolved by the February 27, 2024 judgment, which was long-since final. Once a judgment becomes final, "the trial court is divested of jurisdiction"; "[f]ollowing

12

divestiture, any attempt by the trial court to continue to exhibit authority over the case, whether by amending the judgment or entering subsequent judgments, is void." *Spicer*, 336 S.W.3d at 469; *accord*, *State ex rel. AJKJ, Inc. v. Hellmann*, 574 S.W.3d 239, 242 (Mo. banc 2019). Thus, the circuit court had no authority to enter a new or different judgment on Plaintiffs' breach of contract claim once the February 27, 2024 judgment became final.

Because the present appeal was not timely to challenge the circuit court's February 27, 2024 judgment, we dismiss Plaintiffs' appeal to the extent it challenges the circuit court's underlying judgment on Plaintiffs' breach of contract claim. Point I is denied.

**Point II**

In their second point on appeal, Plaintiffs argue the trial court erred in awarding $379,634.54 in attorney's fees and expenses to Defendants. They state that the trial court erroneously applied the law. Plaintiffs claim that Defendants were not prevailing parties because Defendants failed to make a timely affirmative claim for a fee award, Defendants did not prevail on the main issue in dispute, and that Defendants were not entitled to an award of all requested fees and expenses.

Plaintiffs' appeal of the attorney's fee award *is* timely, because Plaintiffs filed their notice of appeal within ten days after the circuit court's judgment awarding attorney's fees became final: the attorney's fee judgment was entered on May 24, 2024; and Plaintiffs filed their notice of appeal of that judgment on July 2, 2024.

The purchase contracts in this case provide as follows:

15(g) Enforcement. In the event a dispute arises concerning the performance, meaning or interpretation of any provision in this Agreement, the defaulting party or the party not prevailing in such dispute (as the court shall determine) shall pay any and all reasonable costs and expenses incurred by the other party in enforcing or establishing its rights hereunder, including, without limitation, arbitration and court costs and attorneys' and experts' fees. Any such attorneys' fees and other expenses incurred by either party in enforcing a judgment in its favor under this Agreement shall be recoverable separately and in addition to any other amount included in such judgment, and such attorneys' fees obligation is intended to be severable from the other provisions of this Agreement and to survive and not be merged into any judgment.

Plaintiffs argue that Defendants failed to timely make an affirmative claim for an award of attorney's fees because they failed to file a counterclaim seeking a fee award. Plaintiffs filed their petition in November 2021. Defendants filed their answer and counterclaim in January 2022. Under affirmative defenses, Defendants stated: "In further answer, Defendants are entitled to recover their attorney's fees and costs incurred in defending against Plaintiffs' allegations in their Petition." Defendants cited paragraph 15(g) of the purchase contracts which were attached as exhibits. In their prayer for relief, Defendants sought a judgment in their favor "together with its attorney's fees and costs." The allegations and prayer for relief in Defendants' answer were sufficient to plead a request for attorney's fees, to the extent such pleading were required.[2]

---

[2] Prior to the adoption of Rule 74.16, caselaw generally held that attorney's fees were "special damages" which had to be "specifically stated" in a pleading by the party seeking their recovery. *See, e.g., Parsons Const. Co. v. Missouri Pub. Serv. Co.*, 425 S.W.2d 166, 173 (Mo. 1968); *Square Up Builders, LLC v. Crystal Window & Door Sys., Ltd.*, 658 S.W.3d 218, 221 (Mo. App. E.D. 2022). It is unclear whether it remains necessary for a party seeking the recovery of attorney's fees to assert a claim for such relief in their pleadings, when Rule 74.16(a) now provides that "[a] claim for attorney fees . . . must be made by motion filed under this Rule 74.16." Given the allegations and prayer in Defendants' answer, we need not decide whether or

14

Defendants also complied with the procedural requirements of Rule 74.16. We recognize that Defendants' motion for attorney's fees, made less than 30 days after the entry of judgment finding no breach of contract, did not reference Rule 74.16. Under Missouri law, however, trial courts are required to "treat motions based upon the allegations contained in the motion[,] regardless of the motion's style or form." *Amsden v. State*, 567 S.W.3d 241, 244 n.3 (Mo. App. S.D. 2018). Rather than look at the nomenclature used by the parties, trial courts are to look to the actual relief requested. *Id.* (citing *Latham v. State*, 554 S.W.3d 397 405-06 (Mo. banc 2018)). Defendants' motion stated they were entitled to reasonable attorney's fees, costs, and expenses, pursuant to paragraph 15(g) of the purchase contracts. ("The motion must specify the statute, rule, or other ground entitling the movant to the award and state the amount sought."). Defendants' motion further stated the specific amounts sought and explained how they arrived at each amount requested. Based on the substance of Defendants' motion, it was a motion under Rule 74.16. Accordingly, the motion for attorney's fees and costs was timely made.[3]

Plaintiffs also argue that Defendants are not the prevailing party because they did not prevail on the "main issue" at dispute in the litigation, which they state was the alleged water leak at the 909 Walnut Property. "If a contract provides for the payment of

---

not the pleading requirement has been altered by adoption of Rule 74.16, particularly for parties who may not otherwise be seeking affirmative relief.

[3] When asked at oral argument, Plaintiffs conceded that the motion for attorney's fees was timely under Rule 74.16.

attorney's fees in the enforcement of a contract provision, the trial court must award them to the prevailing party." *Robb v. Bond Purchase, L.L.C.*, 580 S.W.3d 70, 84 (Mo. App. W.D. 2019). "The prevailing party is the party prevailing on the main issue in dispute, even though not necessarily to the extent of its original contention." *Id*. (internal quotation marks omitted). "We review a trial court's determination of the prevailing party under a contract as a question of law, which we consider de novo." *Parkway Constr. Services, Inc.*, 573 S.W.3d at 666.

The five counts in Plaintiffs' petition were: Count I – breach of contract regarding TIF overpayment; Count II – breach of contract regarding water leaks; Count III – breach of declaration regarding water leaks; Count IV – negligent misrepresentation regarding water leaks and TIF overpayment; Count V – fraud regarding water leaks and TIF overpayment. Plaintiffs sought damages in the amount of $918,000 with respect to the water leaks. Plaintiffs dismissed Counts II through V. Plaintiffs presented only one count to the trial court for it to consider during the bench trial: Count I for breach of contract relating to the TIF overpayment. Defendants prevailed on that count. Plaintiffs now argue that Defendants are not the prevailing party because the "main issue" in dispute was the water leaks in the dismissed counts as opposed to the TIF overpayment.

Defendants "entitlement to attorneys' fees has its origin solely in the Contract." *Id*. at 667. "Accordingly, we must determine which the Contract qualifies as the prevailing party." *Id*. "To do so, we must interpret the plain language of the Contract." *Id*. One of the legal stipulations at trial was:

c. Plaintiffs allege that Defendants breached, or have otherwise materially failed to meet their contractual obligations detailed in Sections 5, 8(i), 8(j) (911 Walnut Purchase and Sale Agreement only), 10(a), 10(c), 12, and 15(g) of the Purchase and Sale Agreements. … The Plaintiffs do not allege that Defendants are in breach of any other provision of those contracts.

Defendants requested attorney's fees pursuant to paragraph 15(g) of the purchase contracts. That paragraph provides that attorney's fees shall be paid by the party who did not prevail in a dispute "concerning the performance, meaning or interpretation of any provision in this Agreement." Paragraph 15(g) would not permit attorney's fees to be awarded for Plaintiffs' tort claims. *Contrast id*. at 667 (where the contract stated that attorney's fees shall be paid to the prevailing party in any dispute "arising out of or relating to" the contract, attorney's fees can be recovered for equitable claims that "relate to" the contract). With respect to Plaintiffs' claim that Defendants breached the purchase agreement, the trial court found in favor of Defendants. Defendants were the prevailing party within the meaning of Paragraph 15(g).

Plaintiffs further argue that, even if they were the prevailing party, Defendants should not have received an award of all their requested fees and expenses. Plaintiffs state that Defendants were not entitled to fees for their defense of the non-contractual water leak claims. They claim that the contractual provisions expressly limited recovery to fees and expenses "arising out of" defense of claims concerning the contracts. Plaintiffs assert that the trial court erred by awarding fees and expenses to Defendants for work on all claims asserted by all plaintiffs in the original petition, even though all water-leak related claims, which sought close to $1 million in alleged damages, were

17

voluntarily dismissed by plaintiffs before trial, leaving only the breach of contract claim for the roughly $179,000 TIF overpayment for trial. This dismissal also resulted in removal from the case of plaintiffs WI 929, SPE 2, 909 Walnut Condominium Association, and Worcester (although Worcester remained as a Counterclaim-Defendant), and removed Defendant Solomon. Plaintiffs argue that, despite the voluntary dismissal of those parties and claims before trial, the trial court nevertheless awarded fees and expenses for all work related to their presence in the case.

"The trial court's award of reasonable attorney's fees is reviewed for an abuse of discretion." *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 55 (Mo. App. W.D. 2016). "The trial court is considered an expert on fees, given its familiarity with all of the issues in the case and with the character of the legal services rendered." *Id*. "The trial court may determine attorney fees without the aid of evidence." *Id*. (internal quotation marks omitted). "We presume an award of attorney's fees is correct, and it is the complaining party's burden to prove otherwise." *Id*. "We will reverse only if it is shown that the award of attorney's fees was against the logic of the circumstances and was so arbitrary and unreasonable as to shock our sense of justice." *Id*.

> The factors trial courts consider when making a determination as to reasonable attorney's fees include: (1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; (2) the number of hours reasonably spent on the litigation; (3) the nature and character of the services provided; (4) the degree of professional expertise required; (5) the nature and importance of the subject matter; (6) the amount involved or the result obtained; and (7) the vigor of the opposition.

18

*Id*.

"Awarding costs and expenses is within the sound discretion of the trial court and should not be reversed absent a showing that the trial court abused its discretion." *Id*. (internal quotation marks omitted). "A trial court abuses its discretion if an award of costs in a judgment was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.* (internal quotation omitted).

In its judgment, the trial court found:

> Defendants were obliged to provide the court with documents and information supporting their request for attorney fees. The Court is familiar with this matter because of the extensive litigation of this case before the Court. A review of the billing records does not allow the Court to distinguish between billings for one claim versus another, nor would the Court expect that an attorney would distinguish it in that manner since until one month prior to the scheduled Jury Trial of May 1, 2023, the Defendants were defendants in each of the claims and all claims were going to be tried in the Jury Trial. However, the Court concludes that after April 4, 2023 all of the billings refer to its Defense of Count I and prosecution of its Counterclaim and its pursuit of an award of attorney fees as the prevailing party.
> In *Parkway*, the Court awarded the full amount of attorney fees requested despite the Plaintiff only being awarded a fraction of the damages originally sought. The Court stated that Plaintiff's "claims were not easily severable because the research and work done for each claim contributed to the work of the other claims. *Parkway Constr. Services, Inc.*, 573 S.W.3d at 668. After the Court of Appeals affirmed the Trial Court's judgment with regard to attorney fees, the matter was remanded to ensure that Plaintiff "was not awarded excessive attorney's fees." *Id*. at 669. The Court has considered the factors referenced in *Soto* and *Parkway* in its determination of the attorney fees and whether the fees were excessive. The Court does not find the attorney fees or the expenses and costs to be excessive.
> …
> The Court finds that the main issue in dispute was both the condition of the property and the contract for the Purchase and Sale of the property at issue. The Court finds that these issues are closely related and that much of

the work on the case overlapped. The Court further finds that Defendants are entitled to attorney fees based on the Purchase and Sale Agreement that was at issue in this matter. The Court reviewed the itemized list of work completed and attorney's fees charged and finds the rates for this type of work to be fair and reasonable.

The trial court further found that it did not have the authority to enter an award of attorney's fees against parties who were not included as plaintiffs in Count I. Defendants sought anticipated attorney's fees but did not present the trial court with evidence regarding those anticipated fees so the trial court did not award them.

Defendants sought $383,654.54 in attorney's fees. The trial court found Defendants were entitled to $379,643.54 in attorney's fees. Plaintiffs argue that this amount improperly includes attorney's fees paid for the dismissed claims and counterclaim. Plaintiffs argue that the trial court should have tried to separate out the attorney's fees, even if that was a difficult task. *See, .e.g., O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64, 71 (Mo. banc 1989) ("The required segregation [of fees for different claims] may be difficult, but must nevertheless be essayed.").

As set forth in depth above, the trial court's judgment is well thought-out and sets forth the applicable legal guidelines. The judgment reflects the trial court took seriously its duty to award reasonable attorney's fees but not excessive attorney's fees. The trial court's award of attorney's fees is not against the logic of the circumstances, does not shock one's sense of justice, and is not an abuse of discretion.

The point is denied.

**Motion for Attorney's Fees Taken With Case**

20

Defendants filed a motion for appellate attorney's fees with this court that was taken with this case. As discussed above, the Contract contains an attorney's fee provision, granting attorney's fees to the prevailing party for disputes "concerning the performance, meaning or interpretation of any provision" in the purchase contract. Because we dismiss Plaintiffs' appeal of the breach of contract judgment, and affirm the judgment awarding Defendants their attorney's fees, we conclude that Defendants are the prevailing party on appeal. Accordingly, Defendants are entitled to an award of reasonable appellate attorney's fees.

While "appellate courts have the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Parkway Constr. Services, Inc.*, 573 S.W.3d at 672. We remand the case, therefore, to the trial court for an award of reasonable attorney's fees for this appeal.

## Conclusion

Plaintiffs' appeal of the circuit court's February 27, 2024 judgment on their breach of contract claim is dismissed.  The circuit court's May 24, 2024 judgment awarding Defendants their attorney's fees is affirmed.  The matter is further remanded for the trial court to determine and award reasonable attorney's fees incurred on appeal.

_____
Anthony Rex Gabbert, Chief Judge


All concur.